# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16 CR 181 |
| | ) | Judge Sara L. Ellis |
| AWS MOHAMMED YOUNIS | ) | |
| AL-JAYAB, | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S OBJECTION TO SECRET *EX PARTE* CIPA LITIGATION OF FOURTH AMENDMENT SUPPRESSION ISSUES AND MOTION FOR DISCLOSURE TO CLEARED COUNSEL

**THOMAS ANTHONY DURKIN**
**ROBIN V. WATERS**
**DURKIN & ROBERTS**
2446 North Clark Street
Chicago, Illinois 60614
Tel: 312-981-0123
Fax: 312-913-9235
tdurkin@durkinroberts.com
rwaters@durkinroberts.com

**JOSHUA G. HERMAN**
**LAW OFFICE OF JOSHUA G. HERMAN**
53 W. Jackson, Blvd., Suite 1650
Chicago, IL 60604
Tel: (312) 909-0434
Fax: (312) 663-3707
jherman@joshhermanlaw.com

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................ 1

II.  PROCEDURAL BACKGROUND ............................................................................ 4

III. ARGUMENT .............................................................................................................. 5

   A.   The prosecution has improperly relied on CIPA to litigate
      complex and contested Fourth Amendment suppression
      issues without defense participation.. ................................................................... 5

      1.   Recent disclosures indicate that the DOJ has used
         CIPA to litigate suppression issues in secret. .......................................... 5

      2.   The Supreme Court has held that defendants are entitled
         to disclosure and adversarial review when courts address Fourth
         Amendment Suppression issues ................................................................ 8

      3.   CIPA Provide a Mechanism for Courts to Make Relevancy
         Determinations, Not to Resolve Fourth Amendment
         Suppression Disputes on the Merits ......................................................... 12

   B.   CIPA Does Not Authorize Parallel Construction ............................................. 17

   B.   The Prosecution Should Disclose its Legal Standards, Arguments,
      and Interpretations in Support of its § 4 Application ....................................... 19

IV.  CONCLUSION ......................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Agurs v. United States*, 427 U.S. 97 (1976) .............................................................................. 1

*Alderman v. United States*, 394 U.S. 165 (1969) ................................................................ passim

*American-Arab Anti-Discrimination Committee v. Reno*, 70 F.3d 1045 (9th Cr. 1995) .......... 9, 16

*Berger v. New York*, 388 U.S. 41 (1967) ...................................................................... 10

*Bostan v. Obama*, 674 F.Supp.2d 9 (D.D.C. 2009) ....................................................... 20

*Brady v. Maryland*, 373 U.S. 83 (1963) ........................................................................ 1

*Dennis v. United States*, 384 U.S. 855 (1966) ............................................................... 17

*Detroit Free Press v. Ashcroft*, 303 F.3d 681 (6th Cir. 2002) ......................................... 9

*Giglio v. United States*, 405 U.S. 150 (1972) ................................................................. 1

*Guenther v. Commissioner of Internal Revenue*, 889 F.2d 882 (9th Cir. 1989) ............................ 9

*Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123 (1951) ...................................... 9

*Kolod v. United States*, 390 U.S. 136 (1968) ........................................................ 11, 15, 16

*Maine Audubon Soc'y v. Purslow*, 907 F.2d 265 (1st Cir. 1990) .................................................. 14

*Roviaro v. United States*, 353 U.S. 53 (1957) ................................................................ 15

*States v. Acosta*, 357 F .Supp. 2d 1228 (D. Nev. 2005) ................................................... 14

*Stein v. Dep't of Justice & Fed. Bureau of Investigation*, 662 F.2d 1245 (7th Cir. 1981) .............. 9

*Taglianetti v. United States*, 394 U.S. 316 (1969) ......................................................... 10

*United States v. Fannon*, 435 F.2d 364 (7th Cir. 1970) ..................................................... 3

*United States v. Abu Ali*, 528 F.3d 210 (4th Cir. 2008) ................................................... 19

*United States v. Abuhamra*, 389 F.3d 309 (2d Cir. 2004) ........................................................ 9, 16

*United States v. Abu-Jihaad*, 630 F.3d 102 (2d Cir. 2010) ................................................... 19

*United States v. Alderisio*, 424 F.2d 20 (10th Cir. 1970) .................................................. 10

*United States v. Aref*, 533 F.3d 72 (2d Cir. 2008) .................................................... 13, 19

*United States v. Bagley*, 437 U.S. 667 (1986) ................................................................. 1

*United States v. Belfield*, 692 F.2d 141 (D.C. Cir. 1982) .................................................. 10, 12, 16

*United States v. Bissell*, 634 F.2d 1228 (9th Cir. 1980) .................................................. 10, 16

*United States v. Chun*, 503 F.2d 533 (9th Cir. 1974) ...................................................... 14

*United States v. Donovan*, 429 U.S. 413 (1977) ............................................................... 10

*United States v. Dumeisi*, 424 F.3d 566 (7th Cir. 2005) ...................................................................... 4, 12

*United States v. Hanjuan Jin*, 791 F. Supp. 2d 612 (N.D. Ill. 2011) ........................................ 3, 13

*United States v. James Daniel Good Real Prop.*, 510 U.S. 43 (1993) ........................................... 9

*United States v. Klimavicius-Viloria*, 144 F.3d 1249 (9th Cir. 1998) ........................................ 13

*United States v. Libby*, 429 F. Supp. 2d 18 (D.D.C. 2006),
    *amended by* 429 F. Supp.2d 46 .................................................................. 17, 20

*United States v. Marzook*, 412 F. Supp.2d 913 (N.D. Ill. 2006) ..................................................... 9

*United States v. Mejia*, 448 F.3d 436 (D.C. Cir. 2006) ........................................................ 3, 13, 14

*United States v. Moussaoui*, 382 F.3d 453 (4th Cir. 2004) ..................................................... 13

*United States v. Nasser*, 476 F.2d 1111 (7th Cir. 1973) .................................................................. 3

*United States v. O'Hara*, 301 F.3d 563 (7th Cir. 2002) ................................................................. 4

*United States v. Olsen*, 737 F.3d 625, 626 (9th Cir. 2013) ............................................................ 6

*United States v. Poindexter*, 698 F. Supp. 316 (D.D.C. 1988) ...................................................... 3

*United States v. Price*, 566 F.3d 900 (9th Cir. 2009) .................................................................. 14

*United States v. Pringle*, 751 F.2d 419 (1st Cir. 1984)) ............................................................. 13

*United States v. Rezaq*, 134 F.3d 1121 (D.C. Cir. 1998) ............................................................ 14

*United States v. Sedaghaty*, 728 F.3d 885 (9th Cir. 2013) .............................................. 14, 18, 20

*United States v. Smith*, 780 F.2d 1102 (4th Cir. 1985) .............................................................. 13

*United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009) ................................................................ 15

*United States v. U.S. Dist. Court for E. Dist. of Mich., S. Div.* ("*Keith*"),
    407 U.S. 297, 313 (1972) ........................................................................ 11, 12

*United States v. Varca*, 896 F.2d 900 (5th Cir. 1990) ............................................................... 13

*United States v. Yunis*, 867 F.2d 617, 622, 276 U.S. App. D.C. 1 (D.C. Cir. 1989) .............. 13, 14

*Wong Sun v. United States*, 371 U.S. 471 (1963) ................................................................. 15, 16

**Statutes**

18 U.S.C. § 3504 ........................................................................................................ 11, 12

18 U.S.C. app. § 4 ................................................................................................. *passim*

**Other Authorities**

114 Cong. Rec. 14485–86 (1968) ................................................................................. 10

DOJ Office of the Inspector General, *A Review of the Department of Justice's Involvement with the President's Surveillance Program* 347–59 (July 2009) ............. 2, 5, 6, 7

Executive Order 12333 .................................................................................................... 1

John Shiffman & Kristina Cooke, *U.S. Directs Agents to Cover Up Program Used to Investigate Americans*, Reuters, Aug. 5, 2013 ........................................... 18

S. REP. NO. 823 at 9, 96th Cong., 2d Sess. 4, reported in 1980 U.S. CODE CONG. & AMIN. NEWS 4294, 4297 ......................................... 3

S. Rep. No. 95-701, at 65 (1978) ................................................................................. 11

**Rules**

Fed. R. Crim. P. 16 ....................................................................................................... 1

Defendant, **AWS MOHAMMED YOUNIS AL-JAYAB**, by and through his attorneys, **THOMAS ANTHONY DURKIN, ROBIN V. WATERS,** and **JOSHUA G. HERMAN**, pursuant to Fed. R. Crim. P. 16, the Due Process and Effective Assistance of Counsel clauses of the Fifth and Sixth Amendments to the Constitution of the United States, as well as the principles established by *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), *Agurs v. United States*, 427 U.S. 97 (1976), and *United States v. Bagley*, 437 U.S. 667 (1986), files this objection to the use of *ex parte* procedures under Section 4 of the Classified Information Procedures Act ("CIPA") to determine contested Fourth Amendment issues without any defense participation. Defendant moves for disclosure, under an appropriate protective order and to cleared counsel, of surveillance-related information that may be relevant or helpful to the defense in seeking suppression. Additionally, counsel respectfully request that the Court order the prosecution to disclose their legal arguments in support of the §4 application to cleared counsel.

## I.      INTRODUCTION

This motion is filed in conjunction with motions for notice and disclosure, specifically related to the undisclosed surveillance techniques used by the government's intelligence agencies to obtain, acquire and otherwise derive information concerning Defendant, including communications to or from Defendant as well as any communications that are about Defendant. Specifically, counsel have moved for disclosure of E.O. 12333 surveillance, as well as any other surveillance authorities used in addition to FISA and Section 702 of the FAA, for which Defendant has received notice. (Dkt. ## 51, 52). Counsel have also filed a motion seeking the suppression obtained from surveillance conducted pursuant to Section 702 of the FAA, as well as challenging the constitutionality of the FAA itself. (Dkt. ## 47, 48). Counsel have additionally submitted an *ex parte* and under seal pleading concerning CIPA issues to assist the Court in determining if

further disclosures from the prosecutors are appropriate. (Dkt. #54).

Counsel submit this motion due to official disclosures that have revealed that the prosecutors have improperly relied on the CIPA process to conceal surveillance in criminal cases. Among other things, a report issued by the Department of Justice Inspector General as far back as July of 2009, but not made public until September of 2015, severely criticizes the DOJ's criminal discovery practices and shows that prosecutors have has relied on CIPA's *ex parte* procedures to keep criminal defendants such as Al-Jayab from learning about warrantless surveillance used to monitor their communications and activities. *See* DOJ Office of the Inspector General, *A Review of the Department of Justice's Involvement with the President's Surveillance Program* 347–59 (July 2009) ("OIG Report") (excerpt attached as Exhibit A).[1] The report shows that the DOJ has used CIPA to litigate core Fourth Amendment issues—such as whether prosecution evidence is the "fruit of the poisonous tree"—entirely in secret and unbeknownst to defense counsel. While counsel do not have evidence that the prosecutors have engaged in this practice here, given that there has been no Section 2 hearing and substantive CIPA-related pleadings filed to this point, counsel are nevertheless concerned that the prosecutors will rely on *ex parte* CIPA submissions to avoid telling the Defendants about the surveillance it used to monitor their communications and activities. Counsel are also concerned that the prosecutors may use CIPA to engage in "parallel construction" as part of this effort—that is, re-obtaining electronic evidence in order to conceal its

---

[1] The unclassified version of the OIG report is available at: https://oig.justice.gov/special/s0907.pdf. The full yet heavily redacted report is available at: https://oig.justice.gov/reports/2015/PSP-09-18-15-vol-III.pdf.

original surveillance methods from the defense.[2]

In short, neither CIPA nor due process permits the prosecution to withhold material facts from the defense. CIPA merely provides a mechanism for courts to make *relevancy* determinations for discovery purposes. *United States v. Hanjuan Jin*, 791 F. Supp. 2d 612, 617-618 (N.D. Ill. 2011) (*citing United States v. Mejia*, 448 F.3d 436, 455 (D.C. Cir. 2006)). Significantly, CIPA is not a tool for resolving core Fourth Amendment issues without any defense participation. Congress made this clear when CIPA was enacted when it stated as follows: "[T]he defendant should not stand in a worse position, because of the fact that classified information is involved, than he would without the Act." S. REP. NO. 823 at 9, 96th Cong., 2d Sess. 4, reported in 1980 U.S. CODE CONG. & AMIN. NEWS 4294, 4297. *See also United States v. Poindexter*, 698 F. Supp. 316, 320 (D.D.C. 1988).

Moreover, any attempt to advance Fourth Amendment issues in an *ex parte* setting would violate Supreme Court precedent holding that defendants are entitled—as a matter of due process—to litigate Fourth Amendment suppression questions like those at issue here in an *adversarial* proceeding. *See Alderman v. United States*, 394 U.S. 165, 180-85 (1969); *United States v. Nasser*, 476 F.2d 1111, 1123 (7th Cir. 1973); *United States v. Fannon*, 435 F.2d 364, 366 (7th Cir. 1970). Indeed, in CIPA itself, Congress established procedures for defense counsel to access classified information relevant or helpful to the defense, and the Court should utilize those

---

[2] These concerns regarding parallel constructions are well founded. It appears, for instance, that several search warrants issued in the Eastern District of California and the Eastern District of Virginia were used to recreate the discovery of Al-Jayab's email communications with other individuals, and the discovery of Al-Jayab himself. The chronology painted by the search warrants is simply implausible given other known surveillance of Defendant, which pre-dated the issuance of these search warrants. In this respect, the disclosure to the Court in an *ex parte*, classified setting of certain classified information already disclosed to cleared counsel may assist the Court. Counsel respectfully submit that a short presentation of such materials in that setting may well further the Court's understanding of this important point.

procedures to ensure that the Defendants' Fourth Amendment and due process rights are honored here. *United States v. Dumeisi*, 424 F.3d 566, 578 (7th Cir. 2005) (quot*ing United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002)) (primary purpose of CIPA is to "protect and restrict the discovery of classified information in a way that does not impair the defendant's right to a fair trial.").

Thus, to the extent the prosecutors have relied on or will use *ex parte* proceedings in this case to litigate suppression questions beyond CIPA's limited scope, and in violation of due process, Defendant objects and move for disclosure.

Accordingly, Defendant respectfully request that the Court:

1)      Rule that any attempt by the prosecutors to use *ex parte* CIPA proceedings to determine Fourth Amendment suppression issues without any defense participation is inappropriate;

2)      Order disclosure, under an appropriate protective order and to cleared counsel, of all surveillance-related information that may be relevant or helpful to the defense, including information that would inform any motion to suppress based on surveillance the prosecutors have not disclosed; and,

3)      Order disclosure, with appropriate redactions, of all briefing and orders concerning the legal standards, interpretations, or procedures that apply to the intelligence agencies or the prosecutor's use of CIPA to withhold information from the Defendants.

## II.      PROCEDURAL BACKGROUND

On April 7, 2016, the prosecutors filed its pleading entitled, "Motion for Pretrial Conference Pursuant to the Classified Information Procedures Act and Memorandum of Law in Support Thereof." (Dkt. # 13).  Based on the representations in that motion, counsel presume that the prosecutors will, through its *ex parte* pleading and during any CIPA pretrial conference, discuss with the Court "the universe of classified material gathered by the government during this

investigation and the government's proposed plan to address its discovery obligations." (Dkt. #23, p. 8). Counsel understands that, to date, no *ex parte* Section 2 hearing has been held, and the prosecutors are scheduled file its *ex parte* CIPA briefing on March 14, 2017.

### III. ARGUMENT

**A. The prosecution has improperly relied on CIPA to litigate complex and contested Fourth Amendment suppression issues without defense participation.**

The prosecution cannot rely on CIPA proceedings to exclude Defendant from litigation that bears on his right to suppression, as it has done in other cases. This use of CIPA violates the statute itself, which permits *ex parte* proceedings solely for the purpose of making relevancy and admissibility determinations. This practice violates Defendant's constitutional right to due process, which the Supreme Court has said entitles criminal defendants to litigate suppression challenges in adversarial proceedings.

1. Recent disclosures indicate that the DOJ has used CIPA to litigate suppression issues in secret.

As previously mentioned, official disclosures have made clear that the DOJ prosecutors are using CIPA far more expansively than previously known—relying on CIPA procedures to litigate Fourth Amendment suppression issues on the merits, without any defense participation. The OIG Report addresses the "Stellar Wind" surveillance programs, which intelligence agencies operated for years without congressional or judicial approval and which were the predecessors too much of the surveillance that the Defendants have sought to challenge here. *See* OIG Report, supra, 203–66.

Contrary to the DOJ's insistence that it is aware of and complies with its discovery obligations under the Federal Rules of Criminal Procedure and *Brady*, the Inspector General found

that "the Department made little effort to understand and comply with its discovery obligations in connection with Stellar Wind-derived information," and that DOJ's subsequent remedial efforts "[were] not complete and do not fully ensure that the government has met its discovery obligations." OIG Report 357;[3] *see also United States v. Olsen*, 737 F.3d 625, 626, 631 (9th Cir. 2013) (Kozinski, J., dissenting from the order denying the petition for rehearing *en banc*) ("There is an epidemic of *Brady* violations abroad in the land. Only judges can put a stop to it.").

One particular disclosure in the OIG Report bears heavily on this motion. The report makes clear that the DOJ has routinely sought to litigate core Fourth Amendment questions— including whether its evidence is the "fruit of the poisonous tree"—in secret in order to insulate surveillance from adversarial challenge. According to the Inspector General, the DOJ's CIPA submissions in cases involving these surveillance programs:

> [U]niformly stated that information in the NSA's intelligence reports had not been or would not be used as evidence, and that there was no causal connection between the information in the reports and any evidence used or to be used at trial, or was too attenuated from the evidence to be discoverable. The government argued that because the facts concerning the NSA's reporting would not aid the defense, the court need not explore the sources and methods used to acquire the information. The submissions also argued that the information collected by the NSA was not included in the government's FISA application, and therefore was too attenuated from the trial evidence to merit a review of the means by which the intelligence information was gathered. The government asserted that the "causal connection" between discovery of the derivative evidence and the alleged illegal search "may have become so attenuated as to dissipate the taint."

OIG Report 351 (footnotes omitted). Thus, the prosecution would claim that its evidence was not "tainted" by the warrantless surveillance, despite the fact that other portions of the OIG Report

---

[3] The DOJ has redacted portions of the OIG Report that describe its discovery violations in greater detail. OIG Report 335–40, 348–57. Given that DOJ did not fully remedy these problems, counsel request that the Court order the prosecutors to provide them with access to the unredacted OIG Report or, at a minimum, that the Court review the unredacted report *in camera*.

6

call those assertions into question. *See id.* 271–331. Based on its one-sided claims, the DOJ concealed its use of Stellar Wind surveillance from every criminal defendant who was subject to this warrantless wiretapping. This improper practice ensured that neither the surveillance nor the DOJ's "taint" claims were ever subject to an adversarial challenge.

Other official disclosures indicate that the DOJ has employed similar tactics in other settings. For instance, training documents released by DOJ's Drug Enforcement Administration show that the DOJ regularly relies on CIPA to withhold information about surveillance methods from defendants. *See* DEA Training Materials at 66–71, 84–92 (explaining how CIPA is used to cast surveillance tools as mere "tips and leads" and thereby avoid disclosure); *id.* at 62 (describing criminal discovery as the intelligence community's "nemesis" and urging agents to "See No Evil").[4]

In short, the OIG Report and other materials show that the DOJ has used the CIPA process to make one-sided claims in an *ex parte* setting about why its evidence was not tainted by secret surveillance. When making these arguments, prosecutors appear to rely on a variety of different theories in this context, including arguments that: (1) the surveillance was "too attenuated" from the trial evidence; (2) the surveillance was merely a "tip" or a "lead"; (3) the FISA application broke the causal chain; (4) the trial evidence was obtained from an "independent" source; and (5) the "inevitable discovery" exception applies. Counsel respectfully encourage the Court to view with skepticism any similar sounding arguments raised by the prosecutors in this case. Moreover,

---

[4] These documents were released after a FOIA request submitted by the ACLU. (*See* https://www.aclu.org/blog/free-future/aclu-foia-seeks-information-about-how-government-launders-evidence). The records that were released in response to this request are available at: http://www.documentcloud.org/documents/1011382-responsive-documents.html#document/p9. The page numbers above correspond to the page numbering of this undated PDF document.

while the Defendants obviously do not know which secret arguments the prosecutors have made to the Court in this case, its efforts to block discovery of surveillance may sweep even more broadly—arguing, for instance, that the surveillance complies with the Fourth Amendment, that the Defendants have no Fourth Amendment "standing" to challenge a particular search of their information, or that the good-faith exception applies. Ultimately, all of these are complex legal and factual questions that cannot be accurately resolved in an entirely *ex parte* basis in a manner that is remotely consistent with due process.

> 2. The Supreme Court has held that defendants are entitled to disclosure and adversarial review when courts address Fourth Amendment Suppression issues.

As the Supreme Court has made clear, the Fourth Amendment suppression questions the prosecutors may seek to litigate behind CIPA are fact-specific and complex—and they are questions that must be resolved through disclosure and adversarial litigation. In *Alderman v. United States*, 394 U.S. 165 (1969), a case implicating national-security interests, the Supreme Court held that defendants must be permitted to discover information that may be relevant to whether the prosecutors' evidence is fruit of the poisonous tree, because only an adversarial process can ensure fair and accurate resolution of this Fourth Amendment issue. *Id.* at 168, 180-85. The Supreme Court rejected the DOJ's effort to rely on an *ex parte* process. Emphasizing the difficult judgments raised by "cases involving electronic surveillance," the Supreme Court said, "in our view the task is too complex, and the margin for error too great, to rely wholly on the *in camera* judgment of the trial court." *Id.* at 182, n. 14. Instead, so as to avoid leaving both the trial court and the defendants completely dependent upon the DOJ's one-sided claims, the Supreme Court emphasized that adversary proceedings are necessary "to provide the scrutiny which the

Fourth Amendment exclusionary rule demands." *Id.* at 184.[5] The Ninth Circuit Court of Appeals observed in the closely analogous context of a secret evidence case, "[o]ne would be hard pressed to design a procedure more likely to result in erroneous deprivations. . . . [T]he very foundation of the adversary process assumes that use of undisclosed information will violate due process because of the risk of error." *American-Arab Anti-Discrimination Committee v. Reno*, 70 F.3d 1045, 1969 (9th Cr. 1995) (internal quotation marks and citation omitted). *See also United States v. Marzook*, 412 F. Supp.2d 913, 921 (N.D. Ill. 2006) (internal citation and quotation omitted) (in deciding whether to close a hearing to the public because of potential classified information, Judge St. Eve quoted *Stein v. Dep't of Justice & Fed. Bureau of Investigation*, 662 F.2d 1245, 1254 (7th Cir. 1981): "[i]t is a matter of conjecture whether the court performs any real judicial function when it reviews classified documents *in camera*. Without the illumination provided by adversarial challenge and with no expertness in the field of national security, the court has no basis on which to test the accuracy of the government's claims.").

---

[5] As well they should be, *ex parte* proceedings are exceedingly disfavored. As the Sixth Circuit has cautioned, "[d]emocracies die behind closed doors." *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 683 (6th Cir. 2002). As the Ninth Circuit Court of Appeals has observed, "ex parte proceedings are anathema in our system of justice." *Guenther v. Commissioner of Internal Revenue*, 889 F.2d 882, 884 (9th Cir. 1989), appeal after remand, 939 F.2d 758 (9th Cir. 1991). By their very nature, *ex parte* proceedings impair the integrity of the adversary process and the criminal justice system. And as the Supreme Court has recognized, "'[f]airness can rarely be obtained by secret, one-sided determination of facts decisive of rights . . . . No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it.'" *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 55 (1993) (in absence of exigent circumstances, Due Process clause requires government to provide notice and meaningful opportunity to be heard before seizing real property subject to civil forfeiture), *quoting Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 170-72 (1951) (Frankfurter, J., concurring). Similarly, in *United States v. Abuhamra*, 389 F.3d 309 (2d Cir. 2004), the Second Circuit reemphasized the importance of open, adversary proceedings, declaring that "[p]articularly where liberty is at stake, due process demands that the individual and the government each be afforded the opportunity not only to advance their respective positions but to correct or contradict arguments or evidence offered by the other." *Id.* at 322.

Significantly, the secrecy the prosecutors have obtained through CIPA is even more extreme than the nondisclosure unsuccessfully sought in *Alderman*. In *Alderman*, the DOJ had complied with its obligation to provide notice of the surveillance, by disclosing the fact of the wiretaps to the defense. *See Berger v. New York*, 388 U.S. 41, 60 (1967) (requiring notice of electronic surveillance); *United States v. Donovan*, 429 U.S. 413, 430 (1977) ("The *Berger* and *Katz* decisions established that notice of surveillance is a constitutional requirement of any surveillance statute.") (quoting 114 Cong. Rec. 14485–86 (1968)). Moreover, the DOJ conceded that it was required to disclose to the defense all wiretap recordings that were "arguably relevant" to the Fourth Amendment "fruit of the poisonous tree" determination. *See Alderman*, 394 U.S. at 181. Therefore, the DOJ in *Alderman* sought to withhold only certain recordings that it claimed were not even arguably relevant. But even that, the Supreme Court found, violated the defendants' right to a fair and accurate determination of the contested Fourth Amendment issues. *See also United States v. Alderisio*, 424 F.2d 20, 23 (10th Cir. 1970) (applying *Alderman* and holding that "no determination of relevance, 'arguable' or otherwise, will be made *in camera*").[6]

*Alderman* and its progeny instruct that defendants are entitled to notice and disclosure of surveillance notwithstanding the DOJ's claim that its evidence is not "fruit of the poisonous tree." Indeed, in *United States v. Belfield*, 692 F.2d 141 (D.C. Cir. 1982), the D.C. Circuit has recognized that the DOJ may not unilaterally assert that its evidence is untainted in order to conceal

---

[6] Courts applying *Alderman* have permitted *in camera* review as to certain basic questions concerning how *much* disclosure is required, such as whether a given recording contains a defendant's voice. *See Taglianetti v. United States*, 394 U.S. 316 (1969) (per curiam); *United States v. Bissell*, 634 F.2d 1228, 1233 (9th Cir. 1980) (supplemental disclosure may be denied where taint hearing showed that surveillance was "entirely unrelated" to defendant's arrest and conviction). The same cases show that the Defendants are entitled to: (1) notice of the surveillance itself; (2) disclosure of all recordings on which the Defendants were overheard; and (3) an opportunity to examine the investigating agents on the question of Fourth Amendment taint. *See id.*; *Alderisio*, 424 F.2d at 22-24.

surveillance; it must instead disclose the fact of the surveillance to defendants so that this question can be fairly litigated. *See id*. at 146 ("[E]ven when the Government has purported not to be offering any evidence obtained or derived from the electronic surveillance, a criminal defendant may claim that he has been the victim of an illegal surveillance and seek discovery of the logs of the overhears to ensure that no fruits thereof are being used against him."); *see also Kolod v. United States*, 390 U.S. 136 (1968) (per curiam) (rejecting DOJ's unilateral determination that its evidence was not derived from challenged surveillance and requiring adversarial proceedings).

This rule is consistent with the disclosure scheme Congress established in 18 U.S.C. § 3504, which requires the prosecution to "affirm or deny the occurrence" of allegedly unlawful electronic surveillance, so that a defendant has the opportunity to seek suppression. Likewise, in passing FISA, Congress recognized defendants' constitutional right to the type of information the DOJ has apparently sought to withhold under CIPA. *See* S. Rep. No. 95-701, at 65 (1978) (even in the national-security context, a defendant "must be given confidential materials in the government's files to assist him in establishing the existence of 'taint'" (citing the Supreme Court's decisions in *Alderman* and *United States v. U.S. Dist. Court for E. Dist. of Mich., S. Div.* ("*Keith*"), 407 U.S. 297, 313 (1972)).

These authorities illustrate the problem with the DOJ's use of CIPA to completely conceal surveillance from defendants like Mr. Al-Jayab. Prosecutors cannot rely on secret, one-sided submissions to convince the Court that an exception to the "fruit of the poisonous tree" doctrine should apply, that the surveillance was lawful, or that the good-faith exception should apply—all to avoid notice and foreclosing any challenge to its surveillance methods. Deciding these questions at the outset, before the defense has any opportunity to participate or even any knowledge of the

11

surveillance, puts the cart far ahead of the horse. *See Belfield*, 692 F.2d at 146.

Instead, Defendant is entitled to know that he was subject to surreptitious electronic surveillance, to challenge the lawfulness of that surveillance, and then to test through fact-finding and adversarial litigation the extent to which the prosecutions' evidence is derived from any unlawful surveillance. *See Alderman*, 394 U.S. at 181; *United States v. U.S. District Court (Keith)*, 407 U.S. 297 (1972); 18 U.S.C. § 3504. In this way, the notice and disclosure requirements ensure that Defendant will have a meaningful opportunity to suppress unlawfully obtained evidence.

> 3.   CIPA Provides a Mechanism for Courts to Make Relevancy Determinations, Not to Resolve Fourth Amendment Suppression Disputes on the Merits.

Any prosecution effort to litigate Defendant's right to suppression entirely in a secret *ex parte* setting is inconsistent with CIPA itself. In enacting CIPA, Congress established a process that allows courts to make relevancy determinations when discovery implicates classified information. The statute does not permit courts to resolve contested Fourth Amendment questions that bear on a defendant's entitlement to suppression. *See* 18 U.S.C. app. §4.

CIPA's fundamental purpose is to regulate the discovery of classified information "in a way that does not impair the defendant's right to a fair trial." *Dumeisi*, 424 F.3d at 578. It is a procedural tool that requires a court to rule on the relevance of classified information before it is disclosed or admitted into evidence. *Id.* Significantly, Section 4 of CIPA, "does not create any new right of or limits on discovery of classified information." *Hanjuan Jin*, 791 F. Supp. 2d at 617-18; H.R. Rep. No. 96-831, pt. 1, at 27 (1980) (noting that CIPA "is not intended to affect the discovery rights of a defendant"). In this way, CIPA does not narrow—let alone eliminate—the Defendants' longstanding rights to notice and disclosure of surveillance.

12

Thus, if classified information is discoverable—or arguably discoverable—CIPA provides that the prosecutors may apply to the court for a protective order. 18 U.S.C. app. §4. Federal appellate courts have considered the proper standard of review for analyzing the prosecutors' request for a §4 protective order. These courts have adopted variations of a standard that requires disclosure of classified information to the defense when that information is "relevant and helpful" to the defense or "essential to a fair determination of a cause." *See Hanjuan Jin*, 791 F. Supp. 2d at 619 (citing *United States v. Yunis*, 867 F.2d 617, 622, 276 U.S. App. D.C. 1 (D.C. Cir. 1989); *United States v. Aref*, 533 F.3d 72, 79-80 (2d Cir. 2008); *United States v. Moussaoui*, 382 F.3d 453, 472 (4th Cir. 2004); *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998); *United States v. Varca*, 896 F.2d 900, 905 (5th Cir. 1990); *United States v. Smith*, 780 F.2d 1102, 1107-10 (4th Cir. 1985); *United States v. Pringle*, 751 F.2d 419, 427-28 (1st Cir. 1984)).

If the court concludes that the material is relevant or helpful to the defense, it must be disclosed, though the court may impose conditions designed to safeguard sensitive information. *Aref*, 533 F. 3d at 80 (information is "helpful or material"—and must be disclosed—if it is "useful to counter the government's case or to bolster a defense."); *see Mejia*, 448 F.3d at 457 ("Information can be helpful without being 'favorable' in the *Brady* sense."); *Hanjuan Jin*, 791 F. Supp. 2d at 619 ("helpful" means that there is "more than a mere showing of theoretical relevance").

Moreover, courts applying CIPA's procedures have recognized that they must give defendants "the benefit of the doubt" when determining whether information may be relevant or helpful. *Mejia*, 448 F.3d at 458 (citing *Yunis*, 867 F.2d at 624); *see also United States v. Price*, 566 F.3d 900, 913 n.14 (9th Cir. 2009) ("[I]f doubt exists, it should be resolved in favor of the

13

defendant and full disclosure made.") (quoting *United States v. Acosta*, 357 F .Supp. 2d 1228, 1239-40 (D. Nev. 2005)); *United States v. Rezaq*, 134 F.3d 1121, 1142 (D.C. Cir. 1998) ("A court applying this rule [under Section 4 of CIPA] should, of course, err on the side of protecting the interests of the defendant.").[7]

Under these standards, information concerning the surveillance of Defendant should be disclosed under CIPA. First, because CIPA "does not expand or restrict established principles of discovery," *United States v. Sedaghaty*, 728 F.3d 885, 904 (9th Cir. 2013), it preserves Defendant's rights to notice and disclosure of surreptitious surveillance. The statute cannot be invoked to diminish or eliminate these substantive rights. Proper application of CIPA's procedures makes this only clearer. Information disclosing the intelligence agencies' use of surreptitious surveillance is both discoverable and "relevant or helpful" because it is a necessary predicate to *any* motion to suppress the prosecutors' evidence as fruit of the poisonous tree.

Indeed, nothing could be more relevant or helpful to the effective exercise of a defendant's suppression rights than notice—because, without notice, a defendant is unable to challenge an unlawful search at all. *See United States v. Chun*, 503 F.2d 533, 536–37 & n.6 (9th Cir. 1974) (Notice "provide[s] individuals with the opportunity to exercise their constitutional right to challenge the validity of a wiretap, and, thereby, the admissibility of evidence obtained or derived therefrom."). Here, even if the information is in fact privileged, the DOJ's privilege must "give way . . . to a criminal defendant's right to present a meaningful defense." *United States v. Stewart*,

---

[7] In addition to this requirement, the prosecution has a heightened duty of candor when it makes representations and arguments to the Court in an *ex parte* proceeding, precisely because the defense has been excluded. *See Maine Audubon Soc'y v. Purslow*, 907 F.2d 265, 268 (1st Cir. 1990) ("Where counsel appears ex parte, however, the customary checks and balances do not pertain—and the court is entitled to expect an even greater degree of candor from unopposed counsel than in the typical adversary setting.").

14

590 F.3d 93, 131 (2d Cir. 2009); *see Roviaro v. United States*, 353 U.S. 53, 60–61 (1957).

For these reasons, CIPA does not permit the prosecutors to litigate core Fourth Amendment suppression issues entirely in secret, under the guise of "relevance." If surveillance of Defendant contributed to the intelligence agencies' investigation, then the surveillance must be disclosed so that they have a meaningful opportunity to show that it was unlawful and that suppression is required. For example, if the investigation involved secret surveillance that the prosecutors have labeled a mere "tip" or "lead" and if it has, on that basis, claimed in *ex parte* filings that the surveillance is "too attenuated" from the trial evidence, that is not a question of relevance under CIPA. It is a question of whether the Fourth Amendment exclusionary rule applies, *see Wong Sun v. United States*, 371 U.S. 471 (1963)—and *that* is a question that cannot and may not be resolved on the basis of the prosecutors' labels and unrebutted factual and legal claims. *See Kolod*, 390 U.S. at 137.[8]

The prosecutors may take the position that disclosure of surveillance is not "relevant or helpful" because—in their view—Defendant would not be entitled to suppression under the applicable Fourth Amendment doctrines. However, these arguments raise merits questions that cannot be pre-judged in secret without any defense participation. The Supreme Court has held in this very context that the prosecutors' unilateral representations concerning taint cannot be relied upon, and that *ex parte* court review is insufficient to overcome the substantial risks of error and prejudice to defendants, *see Alderman*, 394 U.S. at 182–84. Moreover, the cases demonstrate overwhelmingly that defendants are entitled to know about the *fact* of the surveillance in order to

---

[8] The OIG Report shows that the DOJ made precisely these types of claims in classified proceedings in order to keep defendants from ever learning about warrantless Stellar Wind surveillance—and thus from ever being in a position to challenge the DOJ's claims. OIG Report 351.

challenge it—even in cases implicating national security. *See Keith*, 407 U.S. at 324; *Kolod*, 390 U.S. at 137; *Belfield*, 692 F.2d at 146; *United States v. Bissell*, 634 F.2d 1228, 1233 (9th Cir. 1980); *cf.* 50 U.S.C. § 1806(c) (requiring notice of FISA surveillance). Simply put, disclosure is necessary in light of the relatively low "relevant or helpful" threshold; because courts should err on the side of disclosure; and because defendants must have a meaningful opportunity to seek suppression of unlawfully obtained evidence.

Finally, CIPA's procedures must be interpreted to comport with due process. What the Supreme Court recognized in *Alderman*—and what courts have recognized in numerous other contexts—remains true today: courts are not equipped to stand in for defense counsel when resolving novel, close, or complex questions of fact and law. *See United States v. Abuhamra*, 389 F.3d 309, 322–23 (2d Cir. 2004) ("Particularly where liberty is at stake, due process demands that the individual and the government each be afforded the opportunity not only to advance their respective positions but to correct or contradict arguments or evidence offered by the other."); *American-Arab Anti- Discrimination Committee v. Reno*, 70 F.3d 1045, 1069 (9th Cir. 1995) ("[T]he very foundation of the adversary process assumes that use of undisclosed information will violate due process because of the risk of error."). Suppression proceedings routinely involve extensive discovery, live testimony, and legal argument. Provided with notice and disclosure, Defendant would make informed arguments to the Court on the following questions, among others:

- Whether the intelligence agencies' use of new technologies or novel surveillance methods invaded a reasonable expectation of privacy;

- Whether the surveillance complied with the Fourth Amendment's warrant, probable-cause, and particularity requirements;

- Whether any exception to the warrant requirement properly applies;

- Whether the surveillance complied with any authorizing statute relied on by the intelligence agencies;

- Whether the surveillance was "reasonable" within the meaning of the Fourth Amendment;

- Whether any minimization procedures were legally sufficient given the volume and type of information obtained;

- Whether any of the prosecutions' evidence constitutes "the fruit of the poisonous tree," or whether any exception to that doctrine properly applies;

- Whether any application contained knowing or reckless falsehoods or omissions; and,

- Whether the good-faith exception to the exclusionary rule applies.

These questions are complex. The Court cannot reasonably replicate this inquiry on its own, taking on the role of surrogate defense counsel, especially in the face of extensive one-sided submissions by the government. "In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate." *Dennis v. United States*, 384 U.S. 855, 874-75 (1966); *see United States v. Libby*, 429 F. Supp. 2d 18, 23 (D.D.C. 2006), *amended by* 429 F. Supp.2d 46 (recognizing that "there are fewer threats to national security in disclosing classified documents to a defendant and his attorney who have obtained security clearances, than when disclosure is made to someone who has not received security clearances"). Ultimately, neither CIPA nor due process permit using an *ex parte* proceeding to preclude and defeat suppression motions on the merits before defendants even know the grounds of the potential suppression motion, much less have a chance to bring the motion.

### B. CIPA Does Not Authorize Parallel Construction.

A related misuse of CIPA's procedures has recently come to light—involving the

17

intelligence agencies' reliance on "parallel construction" to conceal the original sources of their evidence. John Shiffman & Kristina Cooke, *U.S. Directs Agents to Cover Up Program Used to Investigate Americans*, Reuters, Aug. 5, 2013, available at: http://reut.rs/1h07Hkl (describing widespread use of "parallel construction" to conceal information obtained from intelligence agencies). By definition, parallel construction conceals from defendants the existence of novel or controversial surveillance, by making it appear that the intelligence agencies relied on more innocuous or conventional methods. In other words, parallel construction is designed to *deprive* defendants of relevant or helpful information—and, with it, the ability to bring an informed motion to suppress the prosecutions' evidence.

At this stage in the CIPA process, the prosecution has not identified for the defense any unclassified substitutions of classified evidence. *See Sedaghaty*, 728 F.3d at 905–07 (identifying and describing substitute). Thus, the defense has no way of knowing what those substitutions are— and, as a consequence, no opportunity to raise any specific challenge to their adequacy. They should be identified to the defense. Moreover, to the extent the prosecution has secretly sought or will seek to rely on CIPA substitutions to engage in parallel construction, those efforts should be rejected and appropriate disclosures ordered.

### C. The Prosecution Should Disclose its Legal Standards, Arguments, and Interpretations in Support of Its §4 Application.

Consistent with the goal of ensuring defendants' right to a fair trial, CIPA provides multiple mechanisms for granting defense counsel access to sensitive information. *See* 18 U.S.C. app. §4 (permitting the government to stipulate to relevant facts or to provide adequate substitutes); *United States v. Abu Ali*, 528 F.3d 210, 247 (4th Cir. 2008) (CIPA vests courts with "wide latitude to deal with thorny problems of national security in the context of criminal proceedings."). Should the

18

Court determine a need to review the prosecutions' §4 submission in camera in whole, or in part, it is respectfully requested that the prosecution be compelled to disclose to cleared defense counsel its arguments in support of non-production, and an adversarial hearing addressing those arguments should be conducted. There is no sensible reason why disclosure of the prosecution's arguments would implicate national security, especially when the arguments could be provided to defense counsel subject to an appropriate protective order.

Such practice is not inconsistent with the Second Circuit's opinion in *Abu-Jihaad*. While in that case, the Court noted that "where the government moves to withhold classified information from the defense, an adversarial hearing with defense knowledge would defeat the very purpose of the discovery rules[,]" *United States v. Abu-Jihaad*, 630 F.3d 102, 143 (2d Cir. 2010), citing *Aref*, 533 F.3d at 81 (internal quotation marks omitted), the Court nevertheless acknowledged that trial judges retain discretion to reject ex parte filings under §4. Indeed, in *Abu-Jihaad*, the Court characterized the defense's opposition as a "challenge to the district court's exercise of discretion to proceed *ex parte*," and reviewed the district court's decision to accept an ex parte filing under an abuse of discretion standard. Id. (emphasis added).

In *Libby*, the district court also recognized its discretion to reject *ex parte* §4 filings. That Court established a procedure for evaluating the necessity of an *ex parte* §4 filing, requiring that any prosecution submission under § 4 must necessarily include a declaration or affidavit, executed by an intelligence community official with the requisite classification authority, that (1) describes the reasons for the classification of the information at issue; (2) sets forth the potential harm to national security that could result from its disclosure; and, (3) explains why the defense, based upon appropriate classification guidelines, does not have a 'need-to-know the information in its

19

unaltered form." *Id.* at 25. The district judge added that, "[u]pon receipt of such a filing, the Court will review it and determine whether the filing should remain *ex parte*, or whether all or some portion of it should [be] provided to the defendant." *Id.* Similarly, in *Bostan v. Obama*, 674 F.Supp.2d 9, 27 (D.D.C. 2009), a Guantanamo Bay habeas case, the Court adopted the same procedure for evaluating *ex parte* submissions under § 4.

Thus, and at a minimum, the Court should require adversarial briefing on the overarching legal issues, and should provide as much of its reasoning and legal conclusions on the public record as possible. *See, e.g.*, *Sedaghaty*, 728 F.3d at 905–07 (analyzing CIPA issues at length in public opinion).

## IV.    <u>CONCLUSION</u>

For the reasons above, the Defendants respectfully request that the Court:

1) Rule that the prosection's use of *ex parte* CIPA proceedings to determine Fourth Amendment suppression issues without any defense participation is improper;

2) Order disclosure, under an appropriate protective order, of all surveillance-related information that may be relevant or helpful to the defense, including information that would inform any motion to suppress based on surveillance the intelligence agencies have not disclosed; and

3) Order disclosure, with appropriate redactions, of all briefing and orders concerning the legal standards, interpretations, or procedures that apply to the prosecution's use of CIPA to withhold information from the Defendants.

Respectfully submitted,


/s/ Thomas Anthony Durkin
**THOMAS ANTHONY DURKIN,**

/s/ Robin V. Waters
**ROBIN V. WATERS,**

/s/ Joshua G. Herman
**JOSHUA G. HERMAN**,
Attorneys for Defendant
Aws Mohammed Younis Al-Jayab.


**DURKIN & ROBERTS**
2446 North Clark Street
Chicago, Illinois 60614
Tel: 312-981-0123
Fax: 312-913-9235
tdurkin@durkinroberts.com
rwaters@durkinroberts.com

**JOSHUA G. HERMAN**
**LAW OFFICE OF JOSHUA G. HERMAN**
53 W. Jackson, Blvd., Suite 1650
Chicago, IL 60604
Tel: (312) 909-0434
Fax: (312) 663-3707
jherman@joshhermanlaw.com

21

## **CERTIFICATE OF SERVICE**

Thomas Anthony Durkin, Attorney at Law, hereby certifies that the foregoing Defendant's Objection to Secret, *Ex Parte* CIPA Litigation of Fourth Amendment Suppression Issues and Motion for Disclosure to Cleared Counsel was served on March 14, 2017, in accordance with Fed.R.Crim.P.49, Fed.R.Civ.P.5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

/s/ Thomas Anthony Durkin
**THOMAS ANTHONY DURKIN**
2446 N. Clark Street
Chicago, Illinois 60614
(312) 981-0123
tdurkin@durkinroberts.com

22