UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff | ) | No. 16 CR 181 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| | ) | |
| AWS MOHAMMED YOUNIS AL-JAYAB | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |
| | ) | |

## (U) GOVERNMENT'S MEMORANDUM IN RESPONSE TO THE COURT'S SEPTEMBER 27, 2017 ORDER

JOEL R. LEVIN
Acting United States Attorney
Northern District of Illinois

Barry Jonas
Shoba Pillay
Assistant U.S. Attorneys
Northern District of Illinois

Chad Davis
Jeremy Balint
Attorney Advisors
Office of Intelligence
National Security Division
Department of Justice

DANA J. BOENTE
Acting Assistant Attorney General for
National Security

Andrew Sigler
Trial Attorney
Counterterrorism Section
National Security Division
Department of Justice

Steven L. Lane
Attorney Advisor
Office of Law and Policy
National Security Division
Department of Justice

# TABLE OF CONTENTS

I. Introduction ...................................................................................................... 1

II. The Review Is To Be Conducted *In Camera* and *Ex Parte* ...................................... 2
   1. *In Camera, Ex Parte* Review Is Required Under FIS ...................................... 3
   2. *In Camera, Ex Parte Review* Is Constitutional .......................................... 7

III. The Defendant Has Not Established Any Basis For Disclosure of the FISA Materials .......... 8
   1. Disclosure Is Not Necessary Under FISA ...................................................... 9
   2. Franks Does Not Require Disclosure of the FISA Materials ................................ 14
   3. Due Process Does Not Require Disclosure .................................................... 17
   4. A Security Clearance Does Not Entitle Defense Counsel
      to the FISA Materials ........................................................................ 23

IV. Conclusion: There Is No Basis for the Court to Disclose the Materials ....................... 27

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ACLU Found. of So. Cal. v. Barr,*
    952 F.2d 457 (D.C. Cir. 1991) ...................................................... 7, 18

*Ake v. Oklahoma,*
    470 U.S. 68 (1985) ............................................................. 19

*Al-Kidd v. Gonzales,*
    2008 WL 5123009 (D. Idaho 2008) .................................... 24

*Brady v. Maryland,*
    373 U.S. 83 (1963) ............................................... 18, 22, 23, 26

*Central Intelligence Agency v. Sims,*
    471 U.S. 159 (1985) ..................................................... 6, 21

*CT&IA v. FCC,*
    330 F.3d 502, 509-10 (D.C. Cir. 2003) ................................. 10

*Franks v. Delaware,*
    438 U.S. 154 (1978) ..................................... 8, 14, 15, 16, 17

*Halperin v. Central Intelligence Agency*
    629 F.2d 144 (D.C. Cir. 1980) ..................................... 6, 7

*Hines v. Miller,*
    318 F.3d 157, 161 (2d Cir. 2003) ................................... 19

*Mathews v Eldridge,*
    424 U.S. 319 (1976) ............................... 18, 19, 20, 21, 22

*Medina v. California,*
    505 U.S. 437 (1992) .............................................. 19

*In re Grand Jury Proceedings of the Special Apr. 2002 Grand Jury,*
    347 F.3d 197 (7th Cir. 2003) ......................................... 2

*In re Kevork,*
    634 F. Supp. 1002 (C.D. Cal. 1985), *aff'd,*
    788 F.2d 566 (9th Cir. 1986) ...................................... 5

*In re Terrorist Bombings in East Africa,*
    552 F.3d 157 (2d Cir. 2008).............................................................. 24

*Kyles v. Whitley,*
    514 U.S. 419, 436-37 (1995) ........................................................ 22

*Prometheus Radio Project v. FCC,*
    373 F.3d 372, 391-92 (3d Cir. 2004) ........................................... 10

*Russello v. United States,*
    464 U.S. 16, 23-24 (1983) ........................................................... 12

*Snider v. United States,*
    468 F.3d 500, 513 (8th Cir. 2006) .............................................. 10

*Strickler v. Greene,*
    527 U.S. 263, 281-82 (1999) ....................................................... 22

*United States v. Abu-Jihaad,*
    531 F. Supp. 2d 299 (D. Conn. 2008), *aff'd,*
    630 F.3d 102 (2d Cir. 2010)..................................................... *passim*

*United States v. Alwan,*
    No. 1:11-CR-13, 2012 WL 399154
    (W.D. Ky. Feb. 7, 2012) .............................................................. 15

*United States v. Amawi,*
    531 F. Supp. 2d 832, 837 (N.D. Ohio 2008) ............................... 26

*United States v. Amawi,*
    2009 WL 961143 (N.D. Ohio 2009)............................................. 25

*United States v. Badia,*
    827 F.2d 1458 (11th Cir. 1987)................................................... 16

*United States v. Belfield,*
    692 F.2d 141 (D.C. Cir. 1982) .............................................. *passim*

*United States v. Benkahla,*
    437 F. Supp. 2d 541 (E.D. Va. 2006) .......................................... 18

*United States v. Butenko,*
    494 F.2d 593 (3d Cir. 1974) ....................................................... 11

*United States v. Bin Laden,*
    126 F. Supp. 2d 264 (S.D.N.Y. 2000)................................................. 24

*United States v. Colkley,*
    899 F.2d 297 (4th Cir. 1990) .................................................. 14, 15

*United States v. Damrah,*
    412 F.3d 618 (6th Cir. 2005)............................................. 7, 18, 20

*United States v. Daoud,*
    12 CR-723, 2014 WL 321384 (N.D. Ill. Jan. 29, 2014)
    755 F.3d 479 (7th Cir. 2014) ..............................................*passim*

*United States v. Duggan,*
    743 F.2d 59 (2d Cir. 1984)...................................................*passim*

*United States v. El-Mezain,*
    664 F.3d 467 (5th Cir. 2011)................................................*passim*

*United States v. Falvey,*
    540 F. Supp. 1306 (E.D.N.Y. 1982)....................................... 18

*United States v. Gamez-Orduno,*
    235 F.3d 453 (9th Cir. 2000) ................................................ 22

*United States v. Gonzales,*
    520 U.S. 1, 6 (1997) ............................................................. 11

*United States v. Gowadia,*
    No. 05-00486, 2009 WL 1649714
    (D. Haw. June 8, 2009).......................................................... 18

*United States v. Hasbajrami,*
    No. 11-CR-623 (JG), 2016 WL 1029500
    (E.D.N.Y. Feb. 18, 2016) ....................................................... 5

*United States v. Hassan,*
    742 F.3d 104 (4th Cir. 2014)................................................ 3

*United States v. Hassoun,*
    04-60001-CR, 2007 WL 1068127
    (S.D. Fla. Apr. 4, 2007) ....................................................... 17

*United States v. Isa,*
    923 F.2d 1300 (8th Cir. 1991)............................................. 3

*United States v. Jayyousi,*
    No. 04-60001, 2007 WL 851278
    (S.D. Fla. Mar. 15, 2007), *aff'd,*
    657 F.3d 1085 (11th Cir. 2011) ........................................................ 18

*United States v. Kashmiri,*
    No. 09-CR-830-4, 2010 WL 4705159
    (N.D. Ill. Nov. 10, 2010) .................................................. 3, 15, 16, 26

*United States v. Ketzeback,*
    358 F.3d 987 (8th Cir. 2004) ........................................................... 15

*United States v. Libby,*
    429 F. Supp. 2d 18 (D.D.C. 2008) ................................................... 25

*United States v. Martin,*
    615 F.2d 318 (5th Cir. 1980) .......................................................... 15

*United States v. Medunjanin,*
    No. 10-CR-19-1, 2012 WL 526428
    (S.D.N.Y. Feb. 16, 2012)..........................................................*passim*

*United States v. Megahey,*
    553 F. Supp. 1180 (E.D.N.Y. 1983)................................................. 18

*United States v. Mejia,*
    448 F.3d 436, 456 (D.C. Cir. 2006) ............................................... 22

*United States v. Mihalik,*
    11-CR-833(A), Doc. No. 108,
    (C.D. Cal. Oct. 3, 2012) .................................................................. 16

*United States v. Mohamud,*
    No. 3:10-CR-00475-KI-1, 2014 WL 2866749
    (D. Or. June 24, 2014)..................................................................... 12

*United States v. Mubayyid,*
    521 F. Supp. 2d 125 (D. Mass. 2007)........................................ 16, 17

*United States v. Nicholson,*
    955 F. Supp. 588 (E.D. Va. 1997)
    No. 09-CR-40, 2010 WL 1641167 (D. Or. Apr. 21, 2010) ........... 18, 24

*United States v. Omar,*
 No. CR-09-242, 2012 WL 2357734
 (D. Minn. June 20, 2012) ............................................................. 3, 10

*United States v. Ott,*
 637 F. Supp. 62 (E.D. Cal. 1986), *aff'd,*
 827 F.2d 473 (9th Cir. 1987) ................................................ 5, 8, 18, 24

*United States v. Raddatz,*
 447 U.S. 667 (1980) ...................................................................... 19

*United States v. Rosen,*
 447 F. Supp. 2d 538 (E.D. Va. 2006) ........................................... 13, 26

*United States v. Shnewer,*
 No. 07-459, 2008 U.S. Dist. LEXIS 112001
 (D.N.J. Dec. 29, 2009) ................................................................ 14, 17

*United States v. Spanjol,*
 720 F. Supp. 55 (E.D. Pa 1989) ....................................................... 18

*United States v. Squillacote,*
 221 F.3d 542 (4th Cir. 2000) ........................................................... 11

*United States v. Stewart,*
 590 F.3d 93 (2d Cir. 2009) ................................................................ 3

*United States v. Warsame,*
 547 F. Supp. 2d 982 (D. Minn. 2008) ........................................ *passim*

*United States v. Yunis,*
 867 F.2d 617 (D.C. Cir. 1989) ........................................................ 6, 7

## U.S. CONSTITUTION

Amend. IV ........................................................................................ 7
Amend. V .................................................................................... 8, 17
Amend. VI ...................................................................................... 18

## FEDERAL STATUTES

18 U.S.C. App. 3,
Classified Information Procedures Act (CIPA) ......................................... 21, 22

50 U.S.C. § 1801 .............................................................................. 1, 11, 12

50 U.S.C. § 1806 .................................................................................... *passim*

50 U.S.C. § 1825 .................................................................................... *passim*

50 U.S.C. § 1881e(a) .............................................................................. 2, 12

## OTHER AUTHORITIES

H.R. Conf. Rep. No. 95-1720, 95th Cong., 2d Sess., Pt. 1 (1978) ............................. 12

S. Rep. No. 95-604(I), 95th Cong., 1st Sess. 58-59 (1978) ......................................... 11

S. Rep. No. 95-701, 95th Cong., 2d Sess. (1978),
*reprinted in* 1978 U.S.C.C.A.N. 3973 .......................................................... 9, 11

Kris & Wilson, *National Security Investigations*
§ 29:3 n.1 (2d ed. 2012) .................................................................................. 10

## I. INTRODUCTION

The United States of America, by acting United States Attorney JOEL R. LEVIN, hereby files this Memorandum in response to the Court's September 27, 2017 order for the Government "to provide a response to Defendant's request for disclosure of FAA and FISA materials, raised at [pages] 8-21 of Defendant's Consolidated Reply" (hereinafter referred to as "the defendant's reply" or Document (Doc.) 69).[1] This memorandum, which supplements the classified and unclassified responses filed by the Government on May 23, 2017, is meant to further assist the Court with its *in camera*, *ex parte* review of the application(s), order(s), and other materials ("the FISA materials") and the orders, certifications, affidavits, procedures, and other materials ("Section 702 materials") related to the physical search and acquisitions authorized pursuant to the Foreign Intelligence Surveillance Act (FISA), 50 U.S.C. §§ 1801 *et seq.*, and in opposition to the motions filed by the defendant, Aws Mohammed Younis Al-Jayab (Al-Jayab).

The defendant, Aws Mohammed Younis Al-Jayab (Al-Jayab), raised for the first time in his reply several new arguments, including "object[ing] to any *ex parte* and *in camera* proceedings under 50 U.S.C. §§ 1806(f) and 1825(g) to determine whether any electronic surveillance or physical search was lawfully authorized and conducted" and requesting disclosure of the FISA materials and Section 702 materials (Doc. 78 at 3-15).[2] For the reasons set forth below, the defendant's arguments are without merit.

---

[1] The Government is herein responding as ordered by the Court and supplementing its previous arguments; the Government is neither waiving any previous arguments nor conceding any of the defendant's claims, and can provide additional briefing if requested. Document 69 was removed by Court Order on September 29, 2017, and refiled by the defendant as Document 78. All further references to the Reply will be to the page numbers as set forth in Document 78.

[2] The defendant did not raise these arguments in his motions to suppress and for discovery (Docs. 47, 48, 51, and 52).

1

## II. THE REVIEW IS TO BE CONDUCTED *IN CAMERA* AND *EX PARTE*

As explained in the Government's unclassified response, (Doc. 63, at 2-3), the defendant's motion triggered this Court's review of the FISA materials and the Section 702 materials pursuant to 50 U.S.C. §§ 1806(f) and 1881e(a), which provide that, after the filing of the Attorney General's affidavit or declaration, such as has been filed here, the district court "shall . . . review *in camera* and *ex parte* the application, order, and such other materials relating to the surveillance [or search] as may be necessary to determine whether the surveillance [or search] of the aggrieved person was lawfully authorized and conducted." 50 U.S.C. §§ 1806(f), 1825(g); *see also* 1881e(a) (applying the same procedure to motions to disclose Section 702 materials or to suppress information obtained or derived from Section 702 acquisitions, which are deemed to be "electronic surveillance" conducted pursuant to Title I of FISA); *In re Grand Jury Proceedings of the Special Apr. 2002 Grand Jury* ("*In re Grand Jury Proceedings*"), 347 F.3d 197, 203 (7th Cir. 2003). On the filing of the Attorney General's affidavit or declaration, the court in making its determination, "may disclose to the aggrieved person, under appropriate security procedures and protective orders, portions of the application, order, or other materials relating to the surveillance [or search] *only* where such disclosure is necessary to make an accurate determination of the legality of the surveillance [or search]." 50 U.S.C. §§ 1806(f), 1825(g) (emphasis added).

Thus, the propriety of the disclosure of any FISA applications or orders to a defendant may not even be considered unless and until the district court has first concluded that it is unable to make an accurate determination of the legality of the acquired collection after reviewing the Government's submissions *in camera* and *ex parte. See United States v. Daoud*, 755 F.3d 479, 481-82 (7th Cir. 2014); *see also United States v. Abu-Jihaad*, 531 F. Supp. 2d 299, 310 (D.

Conn. 2008), *aff'd*, 630 F.3d 102, 129 (2d Cir. 2010) (concluding that "disclosure of FISA

materials 'is the exception and *ex parte, in camera* determination is the rule'") (quoting *United*

*States v. Stewart*, 590 F.3d 93, 129 (2d Cir. 2009)); *United States v. El-Mezain,* 664 F.3d 467,

565 (5th Cir. 2011) (quoting 50 U.S.C. § 1806(f)); *United States v. Belfield*, 692 F.2d 141, 147

(D.C. Cir. 1982). If the district court is able to make an accurate determination of the legality of

the electronic surveillance or physical search based on its *in camera, ex parte* review of the

materials submitted by the United States, then the court *may not* order disclosure of any of the

FISA materials to the defense, unless otherwise required by due process. *See* 50 U.S.C. §§

1806(f), 1825(g); *see also Daoud*, 755 F.3d at 484; *United States v. Kashmiri*, No. 09-CR-830-4,

2010 WL 4705159, *2 (N.D. Ill. Nov. 10, 2010) (stating that "disclosure *may not be ordered*" if

not necessary) (emphasis in original); *Abu-Jihaad,* 630 F.3d at 129; *El-Mezain,* 664 F.3d at 566;

*United States v. Hassan*, 742 F.3d 104, 138 (4th Cir. 2014).

### 1. *In Camera, Ex Parte* Review Is Required Under FISA

Federal courts have repeatedly and consistently held that FISA anticipates that an "*ex*

*parte, in camera* determination is to be the rule," *United States v. Duggan*, 743 F.2d 59, 78 (2d

Cir. 1984) (quoting *Belfield*, 692 F.2d at 147), with disclosure and an adversarial hearing being

the "exception occurring *only* when necessary."[3] *United States v. Omar*, 786 F.3d 1104, 1110

(8th Cir. 2015) (citing *United States v. Isa*, 923 F.2d 1300, 1306 (8th Cir. 1991)); *see also In re*

*Grand Jury Proceedings*, 347 F.3d at 203 (rejecting defendant's argument that his was the "one-

in-a-million case where disclosure is necessary"). In fact, every court but one (whose decision

---

[3] (U) In *Duggan*, the Second Circuit explained that disclosure might be necessary "if the judge's initial review revealed potential irregularities such as 'possible misrepresentations of fact, vague identification of the persons to be surveilled or surveillance records which include[] a significant amount of nonforeign intelligence information, calling into question compliance with the minimization standards contained in the order.'" 743 F.2d at 78 (quoting Rep. No. 95-604(I), 95th Cong., 1st Sess. at 58 (1978), *reprinted in* 1978 U.S.C.C.A.N. 3904, 3960).

was subsequently overturned by the Seventh Circuit)[4] that has addressed a motion to disclose

FISA materials or to suppress FISA information has been able to reach a conclusion as to the

legality of the FISA collection at issue based on its *in camera, ex parte* review. *See In re Grand*

*Jury Proceedings*, 347 F.3d at 203 (noting that no court had ever ordered disclosure of FISA

materials); *Stewart*, 590 F.3d at 128 ("'[E]x parte, in camera* determination is to be the rule'"

(quoting *Belfield*, 692 F.2d at 147)); *El-Mezain*, 664 F.3d at 566-67 (quoting district court's

statement that no court has ever held an adversarial hearing to assist the court); *United States v.*

*Medunjanin*, No. 10 Cr 191 (RJD), 2012 WL 526428, at *10 (E.D.N.Y. Feb. 16, 2012) (noting

that "[n]o United States District Court or Court of Appeals has ever determined that disclosure to

the defense of such materials was necessary to determine the lawfulness of surveillance or

searches under FISA" (quoting *United States v. Warsame*, 547 F. Supp. 2d 982, 987 (D. Minn.

2008))); *Abu-Jihaad*, 531 F. Supp. 2d at 310 ("Courts have uniformly held that *ex parte* and *in*

*camera* inspections are the 'rule' under FISA. . . ." (citing *Duggan*, 743 F. 2d at 78)).

As the exhibits in the Government's previously filed Sealed Appendix make clear, there

is nothing extraordinary about the FISA-authorized physical search and acquisitions in this case

that would justify the production and disclosure of highly sensitive and classified FISA materials

or the suppression of FISA-obtained or -derived evidence. Here, the FISA materials are well-

organized and easily reviewable by the Court *in camera* and *ex parte*, and they are fully and

facially sufficient to allow the Court to make an accurate determination that the FISA

---

[4] (U) The district court in *Daoud* ruled that it was capable of making the determination, but nevertheless ordered the disclosure of FISA materials to the defense. No. 12-CR-723, 2014 WL 321384, at *8 (N.D. Ill. Jan. 29, 2014). The Seventh Circuit resoundingly overturned the district court's decision to disclose the FISA materials, stating, "[s]o clear is it that the materials were properly withheld from defense counsel that there is no need for a remand to enable the district judge to come to the same conclusion, because she would have to do so." *Daoud*, 755 F.3d at 485.

information was lawfully acquired and that the physical search and acquisitions were made in conformity with an order of authorization or approval. In other words, the materials presented "are straightforward and readily understood." *In re Kevork*, 634 F. Supp. 1002, 1008 (C.D. Cal. 1985), *aff'd*, 788 F.2d 566 (9th Cir. 1986). Moreover, as in other cases, "[t]he determination of legality in this case is not complex." *Belfield*, 692 F.2d at 147; *see also In re Grand Jury Proceedings*, 347 F.3d at 203 (stating that "[n]othing we have found in our review of the record supports" the defendant's contention that his was the rare case where disclosure is necessary); *United States v. Hasbajrami*, No. 11-CR-623 (JG), 2016 WL 1029500, at *14 (E.D.N.Y. Feb. 18, 2016) (finding the review of the FISA materials was "relatively straightforward and not complex" such that the court "was able to evaluate the legality of the challenged surveillance without concluding that due process first warranted disclosure") (internal quotations and citations omitted); *Warsame*, 547 F. Supp. 2d at 987 (finding that the "issues presented by the FISA applications are straightforward and uncontroversial"); *Abu-Jihaad*, 531 F. Supp. 2d at 310; *United States v. Thomson*, 752 F. Supp. 75, 79 (W.D.N.Y. 1990). This Court, much like the aforementioned courts, is capable of reviewing the FISA materials *in camera* and *ex parte* and making the requisite legal determination without an adversarial hearing.

In addition to the specific harm that would result from the disclosure of the FISA materials in this case, which is detailed in the classified declaration of an Assistant Director of the FBI in support of the Attorney General's Declaration and Claim of Privilege, the underlying rationale for non-disclosure is clear: "In the sensitive area of foreign intelligence gathering, the need for extreme caution and sometimes even secrecy may not be overemphasized." *United States v. Ott*, 637 F. Supp. 62, 65 (E.D. Cal. 1986), *aff'd*, 827 F.2d 473 (9th Cir. 1987); *see also Daoud*, 755 F.3d at 485 (the Court's "own study of the classified materials has convinced us that

there are indeed compelling reasons of national security for their being classified—that the government was being truthful in advising the district judge that their being made public 'would harm the national security of the United States'—and that their disclosure to the defendants' lawyers is (in the language of section 1806(f)) not 'necessary' for 'an accurate determination of the legality of the surveillance"); *Medunjanin*, 2012 WL 526428, at *9 (finding persuasive the Government's argument that "unsealing the FISA materials in this case would provide the defense with unnecessary details of an extraordinarily sensitive anti-terrorism investigation").

Confidentiality is critical to national security. "If potentially valuable intelligence sources" believe that the United States "will be unable to maintain the confidentiality of its relationship to them, many [of those sources] could well refuse to supply information. . . ." *Central Intelligence Agency v. Sims*, 471 U.S. 159, 175 (1985). When considering whether the disclosure of classified sources, methods, techniques, or information would harm the national security, federal courts have expressed a great reluctance to replace the considered judgment of Executive Branch officials charged with the responsibility of weighing a variety of subtle and complex factors in determining whether the disclosure of information may lead to an unacceptable risk of compromising the intelligence gathering process, and determining whether foreign agents, spies, and terrorists are capable of piecing together a mosaic of information that, if revealed, could reasonably be expected to harm the national security of the United States. *See Sims*, 471 U.S. at 180; *United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989) ("Things that did not make sense to the District Judge would make all too much sense to a foreign counter-intelligence specialist who could learn much about this nation's intelligence-gathering capabilities from what these documents revealed about sources and methods."); *Halperin v. Central Intelligence Agency*, 629 F.2d 144, 150 (D.C. Cir. 1980) (noting that "each individual

piece of intelligence information, much like a piece of jigsaw puzzle, may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself"); *Medunjanin*, 2012 WL 526428, at *10 (quoting *Yunis*, 867 F.2d at 625). An adversary hearing is not only unnecessary to aid the Court in the straightforward task before it, but such a hearing would also create potential dangers that courts have consistently sought to avoid. As the Second Circuit explained in *Stewart*:

> FISA applications are likely to contain allegedly sensitive information relating to perceived issues of national security. The applications are required to set forth how and why the Executive Branch knows what it knows, which may include references to covert agents and informers. For this reason, *ex parte, in camera* determination is to be the rule.

590 F.3d at 128 (quoting *Duggan*, 743 F.2d at 77).

### 2. *In Camera, Ex Parte* Review Is Constitutional

The constitutionality of FISA's *in camera, ex parte* review provisions has been affirmed by every federal court that has considered the matter, including the Seventh Circuit. *See In re Grand Jury Proceedings*, 347 F.3d at 203; *see also United States v. Damrah,* 412 F.3d 618, 624 (6th Cir. 2005) ("FISA's requirement that the district court conduct an *ex parte, in camera* review of FISA materials does not deprive a defendant of due process"); *Abu-Jihaad*, 630 F.3d at 129 (affirming district court's determination that "its *in camera, ex parte* review permitted it to assess the legality of the challenged surveillance and the requirements of due process did not counsel otherwise"); *Stewart*, 590 F.3d at 126 (noting that "the procedures fashioned in FISA [are] a constitutionally adequate balancing of the individual's Fourth Amendment rights against the nation's need to obtain foreign intelligence information" (quoting *Duggan*, 743 F. 2d at 73)); *El-Mezain*, 664 F.3d at 567 (agreeing with the district court that its *in camera, ex parte* review ensured the defendant's constitutional and statutory rights were not violated); *ACLU Found. of*

*So. Cal. v. Barr,* 952 F.2d 457, 465 (D.C. Cir. 1991) (procedure under FISA "is an acceptable means of adjudicating the constitutional rights of persons who have been subjected to FISA surveillance" (citing *Belfield*, 692 F.2d at 141)); *Ott*, 827 F.2d at 476-77 (FISA's review procedures do not deprive a defendant of due process).

In summary, FISA mandates a process by which the district court must conduct an initial *in camera, ex parte* review of FISA applications, orders, and related materials to determine whether the FISA information was lawfully acquired and whether the electronic surveillance and physical search were made in conformity with an order of authorization or approval. *In camera, ex parte* review is the rule in such cases, and that procedure is constitutional. In this case, the Attorney General has filed the required declaration invoking that procedure and has declared that disclosure or an adversary hearing would harm national security. Accordingly, an *in camera, ex parte* review by this Court is the appropriate method to determine whether the FISA information was lawfully acquired and whether the physical search and acquisitions were conducted in conformity with an order of authorization or approval.

## III. THE DEFENDANT HAS NOT ESTABLISHED ANY BASIS FOR DISCLOSURE OF THE FISA MATERIALS

In support of his argument for disclosure of the FISA materials, the defendant claims the following: (1) disclosure "is necessary" to assist this Court with "testing any assertion that he was an agent of a foreign power" and whether he "was considered an agent of a foreign power solely on the basis of activities protected by the first amendment" (Doc. 78 at 3-12); (2) *Franks v. Delaware*, 438 U.S. 154 (1978), requires disclosure of the FISA materials (Doc. 78 at 11-12); (3) disclosure is required "as a matter of due process pursuant to 50 U.S.C. §§ 1806(g), 1825(h), and the Fifth Amendment" (Doc. 78 at 12-15); and (4) disclosure is appropriate because defense

counsel is in possession of a security clearance. (Doc. 78 at 3). For the following reasons, the Court should reject the defendant's claims.

### 1. Disclosure Is Not "Necessary" under FISA

Section 1806(f) provides that "the court may disclose . . . portions of the application, order or other materials relating to the surveillance only where such disclosure is necessary to make an accurate determination of the legality of the surveillance." The defendant urges the Court to adopt a more expansive definition of the word "necessary" to include where it would "substantially promote an accurate determination of legality" (Doc. 78 at 12-13), a reading that is contrary to the plain language of FISA, the clear intent of Congress, and the manner in which federal courts have consistently interpreted the provisions governing disclosure of FISA materials.

There is only one reason to disclose the FISA materials to defense counsel. Sections 1806(f) and 1825(g) require the Court to conduct its review of those materials *in camera* and *ex parte*, and disclosure is within the Court's discretion only following that review and only if the Court is unable to determine the legality of the electronic surveillance, physical search, or both, without the assistance of defense counsel. *See Daoud*, 755 F.3d at 482; *In re Grand Jury Proceedings*, 347 F.3d at 203; *Duggan*, 743 F.2d at 78; *El-Mezain*, 664 F.3d at 567. The legislative history of Section 1806(f) fully supports this approach, stating: "The court may order disclosure to [the defense] only if it finds that such disclosure is necessary to make an accurate determination of the legality of the surveillance. . . . Once a judicial determination is made that the surveillance was lawful, a motion for discovery . . . must be denied." S. Rep. No. 95-701, 95th Cong., 2d Sess., at 64-65.

The defendant proposes a definition of "necessary" that is substantially broader than the definition routinely applied by federal courts. Indeed, every court to have applied the provision has understood it to mean what it says—that disclosure must be "necessary" or "needed." *See* Kris & Wilson, *National Security Investigations* § 31:3 (2d ed. 2012) ("Necessary means 'essential' or 'required,' and therefore the plain language of that provision makes clear that a court may not disclose . . . unless it cannot determine whether the surveillance was unlawful without the assistance of defense counsel and an adversary hearing."). As many courts have emphasized, "[d]isclosure and an adversary hearing are the exception occurring *only* when necessary." *Omar*, 786 F.3d at 1110 (quoting *Isa*, 923 F.2d at 1306) (emphasis in original); *see also In re Grand Jury Proceedings*, 347 F.3d at 203 ("there is no need to disclose any of the FISA materials"); *El-Mezain*, 664 F.3d at 565-66 (5th Cir. 2011) (court did not "need the assistance of defense counsel").[5] Courts have addressed the meaning of "necessary" in this context: "[t]he legislative history explains that such disclosure is 'necessary' only where the court's initial review indicates that the question of legality may be complicated" by factors such as factual misrepresentations, insufficient identification of the target, or failure to comply with the minimization standards in the order, none of which are present here. *Warsame*, 547 F. Supp.

---

[5] For the proposition that the word "necessary" does not always mean absolutely required or indispensable, the defendant cites several cases that address different statutory schemes and where the traditional definition of "necessary" would have led to an absurd result, a situation that does not exist here. *See, e.g.*, *Snider v. United States*, 468 F.3d 500, 513 (8th Cir. 2006) (concurrence) ("the 'appropriate and helpful' meaning of 'necessary' is the only practical interpretation in this context"); *Prometheus Radio Project v. FCC*, 373 F.3d 372, 391-92 (3d Cir. 2004) (approving FCC's interpretation "to avoid absurd results"); *CT&IA v. FCC*, 330 F.3d 502, 509-10 (D.C. Cir. 2003) (traditional "definition of 'necessary' would lead to an absurd result" that would "defy common sense").

2d at 987; *see also El-Mezain*, 664 F.3d at 567; *Abu-Jihaad*, 630 F.3d at 129; *United States v. Squillacote*, 221 F.3d 542, 554 (4th Cir. 2000).[6]

The defendant bases his claim on his interpretation of the legislative history, which as an initial matter this Court need not consider because Section 1806(f) does not contain language in need of clarifying. *See United States v. Gonzales*, 520 U.S. 1, 6 (1997) ("Given the straightforward statutory command, there is no reason to resort to legislative history."). Upon consideration, however, the legislative history cited by the defendant does not support his position. For instance, the two Senate Committee Reports he cites state merely that courts should consider, among other factors, the "likelihood that adversary presentation would substantially promote a more accurate decision." S. Rep. No. 95-604(I), 95th Cong., 1st Sess. 58-59 (1978); S. Rep. No. 95-701, 95th Cong., 2d Sess. 64 (1978) (quoting *United States v. Butenko*, 494 F.2d 593 (3d Cir. 1974) (en banc)). Neither Report enshrines this one factor as authoritative or suggests that it defines the meaning of "necessary" throughout the statute. The defendant ignores other uses of the term "necessary" in FISA, such as the requirement in Section 1801(e) that "foreign intelligence information" be "necessary" to protect against identified national security threats, which according to the legislative history means "more than a showing that the information would be useful or convenient," that "the information is both important and required," and "that a significant need be demonstrated . . . ," all of which support the ordinary definition of "necessary" that has been consistently applied by the courts. S. Rep. 95-701, 95th Cong., 2d Sess. 31; *see also* S. Rep. 95-604(I), 95th Cong., 1st Sess. 31 ("Necessary requires more than a showing that the information would be useful or convenient."). Significantly, the

---

[6] While the defendant claims that this case presents an "extraordinary[ily] complicated factual background" warranting disclosure (Doc. 78 at 10), the Court will see from its review that the concerns identified above are not at issue here.

drafters indicated in which other provisions a different definition should apply. *See* H.R. Conf. Rep. No. 95-1720, 23 (explaining that the term "necessary" in Section 1801(h)(2), which addresses minimization procedures, did "not mean . . . essential to understand the information. . . ."). The fact that the drafters thought it necessary to modify the meaning from "essential" to something less strict in Section 1801(h)(2) indicates that the term's ordinary meaning should prevail in other sections of FISA, such as Section 1806.

Moreover, an earlier version of Section 1806(f) permitted disclosure if it "would likely promote a more accurate determination of such legality," a standard that Congress decided against and ultimately replaced with the stricter "necessary." *See* H.R. Conf. Rep. No. 95-1720, 31-32; *see generally Russello v. United States*, 464 U.S. 16, 23-24 (1983) ("Where Congress includes limiting language in an earlier version of a bill but deletes it prior to enactment, it may be presumed that the limitation was not intended."). Despite the consistent application by federal courts of the traditional definition of "necessary" in Section 1806(f) dating back to *Belfield*, 692 F.2d at 147, Congress not only has left that language unchanged through several amendments of FISA, but also has extended its application to new authorities under FISA. *See, e.g.,* 50 U.S.C. §§ 1825 & 1881 *et seq.*

The defendant argues for the same expansive definition of "necessary" advanced by the defense on appeal in *Daoud* and rejected by the Seventh Circuit, which held that, because the court was capable of making the determination of legality on its own, disclosure was "not 'necessary' under any definition of that word." 755 F.3d at 485. Other courts have rejected similarly expansive definitions, such as in *United States v. Mohamud*, where the defendant unsuccessfully argued that "necessary" in 1806(f) "means something closer to 'helpful' or 'appropriate' and not 'absolutely necessary' or 'essential.'" No. 3:10-CR-475, 2014 WL

2866749, *32 (D. Or. June 24, 2014) *aff'd*, 666 Fed. Appx. 591 (9th Cir. Dec. 5, 2016). The district court stated that while "[o]bviously it would be helpful to the court to have defense counsel review the materials prior to making arguments," Congress "did not put 'helpful' in the statute; it chose 'necessary.'" *Id.* The court specifically "interpret[ed] 'necessary' to be much closer to 'essential' than to 'helpful.'" *Id.*

The defendant's position, which effectively calls for disclosure where defense counsel could provide assistance, instead of where necessary, is merely an attempt to circumvent the clear language of the statute. *See* 50 U.S.C. §§ 1806(f), 1825(g). As the *Belfield* court stated, "Congress was adamant, in enacting FISA, that [its] 'carefully drawn procedure[s]' are not to be bypassed." 692 F.2d at 146 (citing Senate Report at 63). As the *Daoud* Court stated, "the defendant's misreading of the statute" would circumvent the required *in camera, ex parte* review whenever a defense counsel "believed disclosure necessary, since if the judge does not conduct the *ex parte* review, she will have no basis for doubting the lawyer's claim of necessity." 755 F.3d at 482. In this case, the defendant's interpretation differs from the consistent definition of "necessary" by the federal courts, is contrary to what Congress envisioned when it enacted FISA, and is supported only by the defendant's flawed reading of legislative history. Accordingly, this Court should reject the defendant's proposal and apply the definition routinely applied by the courts.[7]

---

[7] Even where defendants have alleged specific errors or misrepresentations in the FISA applications, based on their analysis of the evidence in the case, courts have deemed disclosure unnecessary because they were able to rule on the legality of the surveillance, even in light of the alleged errors, through *in camera, ex parte* review. *See, e.g., Abu-Jihaad*, 630 F.3d at 130; *United States v. Rosen*, 447 F. Supp. 2d 538, 552 (E.D. Va. Aug. 14, 2006) (denying disclosure despite minimization errors that were inadvertent, disclosed to the FISC, and promptly rectified).

## 2. *Franks* Does Not Require Disclosure of the FISA Materials

The defendant speculates that there were "intentional or reckless material falsehoods" in the application(s) submitted to the FISC, in violation of *Franks v. Delaware*, 438 U.S. 154 (1978), and claims that disclosure of the FISA materials is necessary based on this speculation. (*See* Doc. 78 at 11-12). Under the relevant case law, this Court should decline to hold such a hearing. To merit a *Franks* hearing, a defendant must make a "concrete and substantial preliminary showing" that the affiant deliberately or recklessly included false statements, or failed to include material information, in the affidavit, and that the resulting misrepresentation was essential to the finding of probable cause. *Franks*, 438 U.S. at 155-56. Courts apply the same standard when a defendant seeks a *Franks* hearing as part of a challenge to FISA collection; to obtain a hearing, a defendant must "make 'a substantial preliminary showing that a false statement knowingly or intentionally, or with reckless disregard for the truth, was included' in the application and that the allegedly false statement was 'necessary' to the FISA Judge's approval of the application." *Duggan*, 743 F.2d at 77 n.6 (quoting *Franks*, 438 U.S. at 155-56). A defendant must show that the agent lied or recklessly disregarded the truth with specific evidence in the form of "[a]ffidavits or sworn or otherwise reliable statements of witnesses." *Franks*, 438 U.S. at 171. The *Franks* threshold is not met even by an offer of proof of an impropriety that might have affected the outcome of the probable cause determination, but rather requires one that was "necessary to the finding of probable cause." *United States v. Colkley*, 899 F.2d 297, 301-02 (4th Cir. 1990); *see also United States v. Shnewer*, No. 07-459, 2008 U.S. Dist. LEXIS 112001, at *38 (D.N.J. Dec. 29, 2009) ("[E]ven if the Court were to determine there existed a reckless intentional falsehood or omission in the FISA application materials, the

evidence obtained still should not be suppressed unless the Court makes the further finding that the falsehood or omission was material to the probable cause determination.").[8]

Only after a defendant makes the requisite showing may the Court conduct a *Franks* hearing to determine if there are material misrepresentations of fact, or omissions of material fact, in the FISA application(s) sufficient to warrant suppression of the FISA-obtained or - derived evidence.[9] *Franks*, 438 U.S. at 171. In his request, the defendant admits that he "can only speculate" and "cannot identify specific falsehoods or omissions to make the 'substantial preliminary showing' that *Franks* requires for an evidentiary hearing." (Doc. 78 at 11-12). Under the relevant case law, "[w]ithout such a showing, he is foreclosed from obtaining a hearing." *Kashmiri*, 2010 WL 4705159, at *6.[10]

Nevertheless, the defendant claims that a *Franks* hearing and disclosure of the FISA materials is needed to "highlight any intentional or recklessly material falsehoods that may" exist in the FISA application(s) (Doc. 78 at 11), an approach which would allow al-Jayab, and defendants in every case, to obtain the FISA materials by merely alleging some impropriety. Disclosing FISA materials to defendants would then become the rule, violating Congress' clear

---

[8] *See United States v. Alwan*, No. 1:11-CR-13, 2012 WL 399154, at *8-10 (W.D. Ky. Feb. 7, 2012) ("The Court is cognizant of the substantial difficulties [the defendant] has encountered in trying to assert a *Franks* violation. Regardless of the difficulties, however, it does not change the evidentiary burden he must meet.").

[9] Indeed, even if a defendant offers sufficient proof to show that an affidavit involved false statements or omissions, a hearing should not be held where the affidavit would still provide probable cause if the allegedly false material were eliminated, or if the allegedly omitted information were included. *Franks*, 438 U.S. at 171; *Colkley*, 899 F.2d at 300; *United States v. Ketzeback*, 358 F.3d 987, 990 (8th Cir. 2004); *United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980).

[10] Judge Rovner's concurring opinion in *Daoud*, cited by the defense, does not mandate a contrary conclusion. Judge Rovner joined the unanimous panel opinion "in full," 755 F.3d at 485, and made clear that a potential *Franks* claim is not an automatic basis for disclosure of the classified FISA materials. *Daoud*, 755 F.3d at 494-95.

intention, set forth in 50 U.S.C. §§ 1806(f) and 1825(g), that the FISA materials be reviewed *in camera* and *ex parte* in a manner consistent with the realities of modern intelligence needs and investigative techniques. Courts have acknowledged that the FISA statute does not envision such disclosure without establishing a basis for it. For instance, the *Daoud* court noted that it was "hard" for a defendant to make the *Franks* showing "without access to the classified [FISA] materials," but the "drafters of [FISA] devised a solution: the judge makes the initial determination, based on full access to all classified materials. . . ." *Daoud*, 755 F.3d at 483-84. Similarly, in *Belfield*, the court noted that "Congress was also aware of these difficulties [faced by defense counsel without access to FISA materials and] chose to resolve them through means other than mandatory disclosure." *Belfield*, 692 F.2d at 148; *see also Kashmiri*, 2010 WL 4705159, at *6 (noting that courts undertake *in camera*, *ex parte* review, "a process akin to a *Franks* hearing").

The defendant is not entitled to the FISA materials for the purpose of challenging the lawfulness of the FISA authorities, as FISA's plain language precludes defense counsel from accessing the classified FISA materials to conduct a fishing expedition. In *Medunjanin*, the court noted that "[d]efense counsel . . . may not inspect the FISA dockets to construct a better argument for inspecting the FISA dockets. Such a circular exercise would be patently inconsistent with FISA . . . ." 2012 WL 526428, at *10; *see also United States v. Badia,* 827 F.2d 1458, 1464 (11th Cir. 1987) (rejecting the defendant's request for "disclosure of the FISA application, ostensibly so that he may review it for errors"); *United States v. Mubayyid,* 521 F. Supp. 2d 125, 131 (D. Mass. 2007).[11]

---

[11] One judge referred to this as "backwards reasoning" in denying a defendant's motion to suppress FISA-derived evidence. *United States v. Mihalik*, 11-CR-833(A), Doc. No. 108, at 2

Courts have rejected other defendants' attempts to force a *Franks* hearing by positing unsupported speculation to challenge the validity of FISC orders, and this Court should do so here. *See Abu-Jihaad*, 531 F. Supp. 2d at 309; *Shnewer*, 2008 U.S. Dist. LEXIS 112001, at *37 (courts "defer to FISA's statutory scheme"); *Mubayyid*, 521 F. Supp. 2d at 131 ("The balance struck under FISA — which is intended to permit the gathering of foreign intelligence under conditions of strict secrecy, while providing for judicial review and other appropriate safeguards — would be substantially undermined if criminal defendants were granted a right of disclosure simply to ensure against the possibility of a *Franks* violation."); *United States v. Hassoun*, 04-60001-CR, 2007 WL 1068127, at *4 (S.D. Fla. Apr. 2, 2007).

Here, the defendant has failed to carry the burden of establishing the prerequisites for an adversary hearing, and his attempt to obtain disclosure of the FISA materials to meet that burden is unprecedented and runs counter to FISA, *Franks*, and the intent of Congress. For these reasons, the Court should deny the defendant's request for an adversary hearing on his suppression motion. Moreover, the Government respectfully submits that this Court's *in camera, ex parte* review of the FISA materials will demonstrate that "an adversary hearing in this case would be academic because there is no question the FISA application [or applications] passes [or pass] muster." *Medunjanin*, 2012 WL 526428, at *9. Under these circumstances, the defendant's motion should be denied.

### 3. Due Process Does Not Require Disclosure

The defendant also claims that he is entitled to disclosure of the FISA materials under 50 U.S.C. §§ 1806(g), 1825(h) and the Due Process Clause of the Fifth Amendment. (Doc. 78 at 12-15). Courts are in agreement, however, that FISA's *in camera, ex parte* review does not

---

(C.D. Cal. Oct. 3, 2012) (Minute Order Denying Defendant's Motion to Suppress FISA-Derived Evidence).

violate due process, nor does due process require that the defendant be granted access to the FISA materials except as provided for in 50 U.S.C. §§ 1806(f), (g) and 1825(g), (h). *See, e.g., El-Mezain*, 664 F.3d at 567; *Abu-Jihaad*, 630 F.3d at 117; *Damrah*, 412 F.3d at 624; *Ott*, 827 F.2d at 476-77; *Belfield*, 692 F.2d at 148-49; *United States v. Nicholson*, No. 09-CR-40, 2010 WL 1641167, at *3-4 (D. Or. Apr. 21, 2010); *United States v. Gowadia,* No. 05-00486, 2009 WL 1649714 at *2 (D. Haw. June 8, 2009); *United States v. Jayyousi,* No. 04-60001, 2007 WL 851278, at *7-8 (S.D. Fla. Mar. 15, 2007), *aff'd*, 657 F.3d 1085 (11th Cir. 2011); *United States v. Benkahla,* 437 F. Supp. 2d 541, 554 (E.D. Va. 2006); *Barr*, 952 F.2d at 465; *United States v. Nicholson*, 955 F. Supp. 588, 592 (E.D. Va. Feb. 14, 1997) (finding, based on "the unanimous holdings of prior case law, . . . that FISA does not violate the Fifth or Sixth Amendment by authorizing *ex parte in camera* review"); *United States v. Spanjol*, 720 F. Supp. 55, 58-59 (E.D. Pa 1989); *United States v. Megahey*, 553 F. Supp. 1180, 1194 (E.D.N.Y. 1983); *United States v. Falvey*, 540 F. Supp. 1306, 1315-1316 (E.D.N.Y. 1982). Nevertheless, the defendant claims that due process requires disclosure of the FISA materials under the U.S. Supreme Court decisions in *Brady v. Maryland*, 373 U.S. 83 (1963) and *Mathews v. Eldridge*, 424 U.S. 319 (1976) (Doc. 78 at 12-15). Neither of those decisions supports his argument.

Specifically, the defendant submits that this Court "must" consider disclosure under the balancing test applied by the Supreme Court in *Mathews* (Doc. 78 at 12), which requires consideration of: (1) the defendant's private interest in disclosure of the FISA materials; (2) the risk that the defendant will be erroneously deprived of his right to the materials; and (3) the Government's interest in preventing disclosure of the materials. *Mathews*, 424 U.S. at 335; *El-Mezain*, 664 F.3d at 567. According to the defendant, his interest in obtaining the FISA materials outweighs the Government's interest in keeping the materials secret. (Doc. 78 at 13).

The defendant's claim fails, however, because "it is inappropriate to employ the *Mathews* balancing test in criminal cases." *Hines v. Miller*, 318 F.3d 157, 161 (2d Cir. 2003).

The Supreme Court has questioned the appropriateness of the *Mathews* balancing test for analyzing due process claims in criminal cases. In *Medina v. California*, 505 U.S. 437 (1992), the Court stated that "the *Mathews* balancing test does not provide the appropriate framework for assessing the validity of state procedural rules which, like the one at bar, are part of the criminal process." *Id.* at 443. The Court explained that:

> [i]n the field of criminal law, we "have defined the category of infractions that violate 'fundamental fairness' very narrowly" based on the recognition that, "[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." The Bill of Rights speaks in explicit terms to many aspects of criminal procedure, and the expansion of those constitutional guarantees under the open-ended rubric of the Due Process Clause invites undue interference with both considered legislative judgments and the careful balance that the Constitution strikes between liberty and order.

*Id.* (internal citations omitted). The Court observed that it had "invoked *Mathews* in resolving due process claims in criminal law cases on only two occasions," in *United States v. Raddatz*, 447 U.S. 667 (1980), and *Ake v. Oklahoma*, 470 U.S. 68 (1985), and "it is not at all clear that *Mathews* was essential to the results in those cases." *Medina*, 505 U.S. at 444. The decision in *Mathews*, therefore, identifies no due process right that requires disclosure of FISA materials to the defendant, and this Court should decline his invitation to use an inappropriate analytical framework to do so.

Because of the questionable application of the *Mathews* balancing test to due process claims in criminal cases, federal courts have been reticent to apply it to the disclosure of FISA materials. *See, e.g., Warsame*, 547 F. Supp. 2d at 988 (court "not convinced that *Mathews* balancing test supplies an appropriate framework for evaluating FISA procedures"); *El-Mezain*, 664 F.3d at 567 ("[a]ssuming without deciding that that the *Mathews* balancing test is

applicable"); *Damrah*, 412 F.3d at 624 (stating that defendant's "reliance on *Mathews* is misplaced . . . because FISA's requirement that the district court conduct an *ex parte, in camera* review of FISA materials does not deprive a defendant of due process"). As discussed below, those courts that have applied the test have consistently found that the three factors weigh in favor of the *ex parte, in camera* determination of legality required by FISA and against disclosure of the FISA materials.

In *Warsame*, the court acknowledged the defendant's important privacy and liberty interests, and held that disclosure of the FISA materials was not "the appropriate response to this concern." 547 F. Supp. 2d at 988. The court stated that "FISA attempts to protect the rights of individuals not through mandatory disclosure but through 'in-depth oversight of FISA surveillance by all three branches of government and by a statutory scheme that to a large degree centers on an expanded conception of minimization that differs from that that which governs law-enforcement surveillance.'" *Id.* at 988-89 (quoting *Belfield*, 692 F.2d at 148). The court found that, given these protections, and the court's careful review of the FISA materials in the case, "the probable value of disclosure, as well as the risk of nondisclosure, of the FISA materials to the defense [was] low." *Warsame*, 547 F. Supp. 2d at 989. Moreover, the court concluded that the Government "has a substantial national security interest in preventing the disclosure of [the FISA materials]." *Id.*

Similarly, in *El-Mezain*, the Fifth Circuit agreed with the district court's assessment that "the *in camera* and *ex parte* review by the district court adequately ensured that the defendants' statutory and constitutional rights were not violated," and that "as a matter of national security, the Government [had] a substantial interest in maintaining the secrecy of the materials." 664 F.3d at 567. The court noted that "[t]his interest extends not only to the contents of the materials

but also to the appearance of confidentiality in the operation of the intelligence services." *Id.* at 567-68 (citing *Sims*, 471 U.S. at 175 ("If potentially valuable intelligence sources come to think that the Agency will be unable to maintain confidentiality of its relationship to them, many could well refuse to supply information to the agency in the first place.")) Thus, even under the *Mathews* test, the Government's interest outweighs the defendant's interest in disclosure, consistent with the *El-Mezain* and *Warsame* decisions.

In support of his *Mathews* claim, the defendant states that the harm to national security is "generalized" and unrelated to "the circumstances of this case." (Doc. 78 at 15.) This argument does not account for the fact that the Attorney General has filed a declaration in this case stating that disclosure or an adversary hearing would cause grave damage to the national security of the United States. In addition, the Court has before it an explanation of the specific harms that would result from such disclosure or an adversary hearing. Specifically, the classified declaration of an FBI Assistant Director, in support of the declaration of the Attorney General, identifies the specific harms that would result from the disclosure of or an adversary hearing regarding the FISA materials in this case. The conclusions in the Assistant Director's declaration deserve deference, for they come from a high-level official who has expertise in intelligence-gathering, and are grounded in the specific facts of this case.

The defendant also states that the government's "national security interest" is "undermined in light of the protections available under the Classified Information Procedures Act (CIPA)." (Doc. 78 at 14-15). The Government's response is based on the statutory language of FISA and the opinions of courts that have addressed motions to disclose FISA materials and to suppress FISA collection. CIPA addresses pretrial discovery of classified information by defendants, and procedures to safeguard classified information, both before and

during trial, that is either not discoverable or not relevant and helpful to the defense. CIPA provides a separate and distinct statutory framework that is simply inapplicable to this motion seeking disclosure of FISA materials, which is governed by 50 U.S.C. §§ 1806 and 1825. For these reasons, the *Mathews* decision lends no support to the defendant's claim that due process requires disclosure of the FISA materials.

Finally, the defendant claims that he is entitled to disclosure of the FISA material under *Brady*. (Doc. 78 at 15.) In support of his claim, the defendant cites the decision in *United States v. Gamez-Orduno*, 235 F.3d 453 (9th Cir. 2000), in which the Ninth Circuit stated that "[t]he suppression of material evidence helpful to the accused, whether at trial or on a motion to suppress, violates due process if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Id.* at 461. The defendant then argues that the FISA materials would be "helpful to the defense in preparing a motion to suppress the FISA-derived evidence," and thus, *Brady* requires disclosure. (Doc. 78 at 15).

The defendant, however, substantially overstates the Government's obligation to disclose evidence that is favorable to the defendant. *Brady* and its progeny "hold that due process requires the disclosure of information that is 'favorable to the accused, either because it is exculpatory, or because it is impeaching' of a government witness." *United States v. Mejia*, 448 F.3d 436, 456 (D.C. Cir. 2006) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). "While *Brady* information is plainly subsumed within the larger category of information that is "at least helpful" to the defendant, information can be helpful without being 'favorable' in the *Brady* sense. . . ." *Mejia*, 448 F.3d at 456-57. Accordingly, "the constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense." *Kyles v. Whitley*, 514 U.S. 419, 436-37 (1995).

The plain intention of 50 U.S.C §§ 1806(g) and 1825(h)—allowing the Court to order disclosure of material to which the defendant would be entitled under the Due Process Clause, such as material that had not been previously disclosed under *Brady*, even while ruling against the defendant's motion generally—cannot be interpreted to support the defendant's demand for access to all of the FISA materials in advance of the Court's *in camera, ex parte* review and determination of the legality of the collection. With respect to any claim that the FISA materials contain information that due process requires be disclosed to the defense, the request is premature since the Court will make that factual determination for itself during its *in camera, ex parte* review. The Government is confident that the Court's review of the challenged FISA materials will not reveal any material that due process requires be disclosed to the defendant, such as *Brady* material, as provided for in § 1806(g). Accordingly, the defendant's claim that he is entitled to the disclosure of the FISA material under *Brady* should be rejected.

### 4. A Security Clearance Does Not Entitle Defense Counsel to the FISA Materials

Finally, the defendant argues for disclosure because his counsel has a security clearance. (Doc. 78 at 3). As discussed above, the only statutory authorities that grant a court discretion to disclose the FISA materials at this stage are set out at 50 U.S.C. §§ 1806(f) and 1825(g), and these provisions permit disclosure only where the court finds that it is unable to determine the legality of the physical search and acquisitions based on its *in camera, ex parte* review alone and without the assistance of defense counsel. Defense counsel's security clearance does not affect the need to have an *ex parte, in camera* review to determine whether disclosure would harm national security. *Daoud*, 755 F.3d at 481-486; *see also Abu-Jihaad*, 630 F.3d at 129 (pursuant to FISA, a district court must review *in camera* and *ex parte* the FISA materials and may only order disclosure to the extent required by due process).

In the FISA context, courts have consistently held that while holding a valid security clearance is a necessary prerequisite to reviewing classified information, it is not a sufficient basis for a court to order disclosure of classified information to defense counsel. Instead, cleared counsel only has a "need to know" if the Court determining the legality of the surveillance concluded that disclosure is "necessary." In *United States v. Bin Laden*, 126 F. Supp. 2d 264 (S.D.N.Y. 2000), the court denied the disclosure of the FISA materials to cleared counsel, noting that "[d]efense counsel's assertion that, given their security clearances, they ought to have access to the sensitive documents is not persuasive to this Court. As the Government explains, those security clearances enable attorneys to review classified documents, 'but they do not entitle them to see all documents with that classification.'" 126 F. Supp. 2d at 287 n.27, *aff'd by In re Terrorist Bombings in East Africa*, 552 F.3d 157 (2d Cir. 2008). In *Ott*, the court also rejected this argument, noting Congress's

> legitimate interest in authorizing the Attorney General to invoke procedures designed to ensure that sensitive security information is not unnecessarily disseminated to anyone not involved in the surveillance operation in question, whether or not she happens for unrelated reasons to enjoy a security clearance. We reject the notion that a defendant's due process right to disclosure of FISA materials turns on the qualifications of his counsel.

827 F.2d at 476-77; *see also Nicholson*, 2010 WL 1641167, at *5 (referencing *Ott* and holding that "[b]ased on [the court's] *in-camera* review . . . the disclosure of FISA materials to [cleared] defense counsel is neither required nor appropriate"); *Al-Kidd v. Gonzales,* No. CV 05-093-EJL-MHW, 2008 WL 5123009 at *7 (D. Idaho Dec. 4, 2008) ("despite plaintiff counsel's security clearances and therefore their ability to review sensitive information, the [*Ott*] court denied the plaintiff access to materials gathered pursuant to FISA. . . . [E]ven with a protective order and

appropriate security clearances, this Court may still deny al-Kidd access to the information.");

*Warsame*, 547 F. Supp. 2d at 989 n.5; *El-Mezain*, 664 F.3d at 568.

Courts have repeatedly held that defense counsel are required to have more than a security clearance — defense counsel must also have a need to know. The Seventh Circuit addressed the "need to know requirement" by stating:

> [i]t's also a mistake to think that simple possession of a security clearance automatically entitles its possessor to access to classified information that he is cleared to see . . . . So in addition to having the requisite clearance the seeker must convince the holder of the information of the seeker's need to know it.

*Daoud*, 755 F.3d at 484.[12] "A clearance itself is not enough for access to classified information: there is quite sensibly, also a 'need to know' requirement. . . . Clearance simply qualifies counsel to view secret materials. It does not, however, *entitle* counsel to see anything and everything that the government has stamped classified even if it has something to do with a client." *United States v. Amawi*, No. 3:06CR719, 2009 WL 961143, at *1, 2 (N.D. Ohio Apr. 7, 2009) (emphasis in original); *see also Medunjanin*, 2012 WL 526428, at *9 ("Defense counsel's security clearances add little to the case for disclosure. . . . As the government persuasively argues, unsealing the FISA materials in this case would provide the defense with unnecessary details of an extraordinarily sensitive anti-terrorism investigation."); *United States v. Libby*, 429 F. Supp. 2d 18, 24 n.8 (D.D.C. 2008) ("It is axiomatic that even if the defendant and his attorneys had been granted the highest level of security clearances, that fact alone would not

---

[12] As the Seventh Circuit explained in *Daoud*, disclosing state secrets to cleared counsel could in fact harm national security because cleared counsel "might in their zeal to defend their client, to whom they owe a duty of candid communication, or misremembering what is classified and what is not, inadvertently say things that would provide clues to classified material." 755 F.3d at 484. The potential threat that classified information may be disclosed to the defendant, even inadvertently, is further justification for the FISA materials not to be disclosed. Indeed, in this case, the defense reply was stricken and defense counsel was ordered to refile the documents following the correct procedure. (Doc. 77.)

entitle them to access to every piece of classified information this country possesses."). If this Court concludes from its *in camera, ex parte* review of the FISA materials that it is capable of accurately determining the legality of the FISA collection at issue, then no defense attorney, even one with an otherwise appropriate security clearance, would have a "need to know" any of the FISA materials.

The defendant's arguments in support of disclosure of the FISA materials have no basis in the law, and disclosure of the FISA materials would cause exceptionally grave damage to the national security. *See Rosen*, 447 F. Supp. 2d at 546 (stating that "exceptional nature of disclosure of FISA material is especially appropriate in light of the possibility that such disclosure might compromise the ability of the United States to gather foreign intelligence information effectively" (citing *Belfield*, 692 F.2d at 147)). The Government respectfully submits that, contrary to the defendant's assertions, there is nothing extraordinary about this case to justify an order to disclose the highly sensitive and classified FISA materials in this case under the applicable FISA standard. *See Amawi*, 531 F. Supp. 2d at 839 ("nothing in those materials comes within the government's *Brady* obligations, or otherwise could properly provide a basis for granting the defendants' motion for disclosure"); *Rosen*, 477 F. Supp. 2d at 546 ("Review of the FISA applications, orders and other materials in this case presented none of the concerns that might warrant disclosure to the defense."). Where, as here, defense participation is not necessary, FISA requires that the FISA materials remain protected from disclosure. *See Kashmiri*, 2010 WL 4705159, *3 (a Judge in this district denied motion because "disclosure of the materials is unnecessary for the Court to determine the legality of the collection" and noted that the "one-in-a-million case has yet to occur"). Accordingly, the defendant's motion for disclosure of the FISA materials should be denied.

## IV. **CONCLUSION: THERE IS NO BASIS FOR THE COURT TO DISCLOSE THE FISA MATERIALS**

For the foregoing reasons, the defendant's motion should be denied without a hearing. The FISA materials at issue here, which have been submitted for *in camera*, *ex parte* review in the Sealed Appendix, are organized and readily understood, and an overview of them has been presented herein as a frame of reference. The Government respectfully submits that this Court will be able to render an accurate determination of the legality of the FISA collection based on its *in camera*, *ex parte* review, and the defendant has failed to present any colorable basis for disclosure.

Based on the foregoing analysis, the Government respectfully submits that the Court must conduct an *in camera*, *ex parte* review of the FISA materials and the Government's classified submission, and should: (1) find that the physical search and acquisitions at issue in this case were both lawfully authorized and lawfully conducted; (2) hold that disclosure of the FISA materials and the Government's classified submissions to the defendant is not authorized because the Court is able to make an accurate determination of the legality of the surveillance and search without disclosing the FISA materials or any portions thereof; (3) hold that the fruits of physical search and acquisitions should not be suppressed; (4) deny the defendant's motion without an evidentiary hearing; and (5) order that the FISA materials and the Government's classified submissions be maintained under seal by the Classified Information Security Officer or his or her designee.[13]

---

[13] (U)  A district court order granting motions or requests under 50 U.S.C. §§ 1806(g) or 1825(h), a decision that electronic surveillance or physical search was not lawfully authorized or conducted, and an order requiring the disclosure of FISA materials is each a final order for purposes of appeal. 50 U.S.C. §§ 1806(h), 1825(i).  Should the Court conclude that disclosure of any item within any of the FISA materials or suppression of any FISA-obtained or -derived information may be required, given the significant national security consequences that would

Respectfully submitted this 10th day of October, 2017.

JOEL R. LEVIN
Acting United States Attorney


_____/s/_____
BARRY JONAS
Assistant United States Attorney


_____/s/_____
SHOBA PILLAY
Assistant United States Attorney


ANDREW SIGLER
Trial Attorney
Counterterrorism Section
National Security Division
United States Department of Justice

Chad Davis
Jeremy S. Balint
Attorney Advisors
Office of Intelligence
National Security Division
Department of Justice

Steven L. Lane
Attorney Advisor
Office of Law and Policy
National Security Division
Department of Justice

Attorneys for Plaintiff
UNITED STATES OF AMERICA

---

result from such disclosure or suppression, the Government would expect to pursue an appeal. Accordingly, the Government respectfully requests that the Court indicate its intent to do so before issuing any order, and that the Court stay any such order pending an appeal by the United States of that order.