# EXHIBIT B



**U.S. Department of Justice**

*United States Attorney*
*Northern District of Illinois*

| | | |
|---|---|---|
| Barry Jonas<br>Assistant United States Attorney | Dirksen Federal Courthouse<br>219 South Dearborn Street, Fifth Floor<br>Chicago, IL 60604 | Direct Line: (312)886-8027<br>Fax: (312)353-4322<br>E-mail: Barry.Jonas@usdoj.gov |

December 11, 2017

Thomas A. Durkin
Durkin & Roberts
2446 North Clark St.
Chicago, Illinois 60614

Joshua G. Herman
53 West Jackson Blvd.
Suite 1650
Chicago, Illinois 60604

    Re:    *United States v. Aws Al-Jayab*, No. 16 CR 181

Dear Messrs. Durkin and Herman:

    We are in receipt of your October 11, 2017 discovery letter. In your letter you request "additional documents and information concerning the government's involvement in Syria," specifically, in sum, documents and information related to the U.S. government's involvement or association with "rebel" groups in Syria, to include the provision of funds, arms, training and other support, as well as documents pertaining to the U.S. government's withdrawal of support for said groups. You state that the information is relevant to a lawful combatant defense, as well as a public authority defense pursuant to Federal Rule of Criminal Procedure 12.3. You also argue that the U.S. government's support for "Syrian rebels aligned against Bashar al-Assad while Mr. al-Jayab was allegedly in Syria is highly material" to the defendant's state of mind.

    The government has and will continue to comply with its actual discovery obligations. That said, your October 11, 2017 discovery request is unfounded in the law and overly broad. Therefore, without confirming or denying whether the requested items are within the government's possession, generally, or the possession of the prosecution team, specifically, they will not be produced.

    *Lawful Combatant Immunity*

    The defendant bears the burden to establish the affirmative defense of combatant immunity. *See United States v. Lindh*, 212 F. Supp. 2d 541, 557 (E.D. Va. 2002) (holding that "it is Lindh who bears the burden of establishing the affirmative

defense that he is entitled to lawful combatant immunity," (citing i *Mullaney v. Wilbur*, 421 U.S. 684, 697-99 (1975)); *see also* Mem. Op. and Order at 6, *United States v. Ahmed et al.*, No. 15-CR-00049 (D. Minn. Feb. 10, 2016), Doc. #368 ("[I]t is the defendant's burden to establish that they are entitled to lawful combatant immunity").

Lawful combatant immunity is a doctrine reflected in international law, including the law of war (or law of armed conflict). In an international armed conflict, lawful combatants, also known as prisoners of war (POWs), may not be prosecuted for lawful acts of war. *See Lindh*, 212 F. Supp. 2d at 553. However, the mere existence of a common law affirmative defense of combatant immunity in federal court does not mean that a defendant is immunized for criminal acts simply because he subjectively believes he has justly taken up arms in a conflict. *Id.* at 554.

The affirmative defense of combatant immunity incorporates the standards of the *Geneva Convention (III) Relative to the Treatment of Prisoners of War*, Aug. 12, 1949, 6 U.S.T. 3316, 75 U.N.T.S. 135, 1956 WL 54809 (U.S. Treaty 1956) ("GPW"), to which the United States is a party. The GPW reflects two overarching requirements for a valid assertion of combatant immunity. In particular, under the GPW, "this immunity can be invoked only by members of regular or irregular armed forces who fight on behalf of a state and comply with the requirements for lawful combatants." *See Lindh*, 212 F. Supp. 2d at 554. Defendant satisfies neither condition.

First, combatant immunity only applies in the context of an international armed conflict within the meaning of GPW Article 2. Under the GPW, an international armed conflict is a conflict between States, not merely a conflict that takes place on a global stage or that straddles a border. If the United States supports one side of a non-international armed conflict, such support does not transform the conflict into an international one within the meaning of the GPW. Likewise, as a legal matter, it is incorrect and dangerously overbroad to say that combatant immunity flows to a defendant fighting in an armed group simply because the United States supports that group or any groups fighting alongside that group. Here, there is no evidence that defendant was a member of the armed forces of a State engaged in armed conflict with another State—i.e., that defendant was a participant in an international armed conflict.

Second, even if the relevant conflict were international in nature, the defendant must still be part of a group that satisfies the requirements set forth in GPW Article 4 before he could be entitled to lawful combatant/POW status and therefore combatant immunity. Under those requirements, the group must act under the authority of a State that is a party to the conflict, and its members must (1) be commanded by a person responsible for his or her subordinates; (2) display a fixed distinctive sign recognizable at a distance; (3) carry arms openly; and (4) conduct operations in accordance with the laws and customs of war. In assessing these four

2

requirements, federal courts that have addressed combatant immunity claims have focused on whether the overall military organization, not the individual defendant or his particular unit, satisfied them. *See* Mem. Op. and Order at 6, *United States v. Ahmed et al.*, No. 15-CR-00049 (D. Minn. Feb. 10, 2016), Doc. #368; *Lindh*, 212 F. Supp. 2d at 558 n.39 ("What matters for determination of lawful combatant status is not whether Lindh personally violated the laws and customs of war, but whether the Taliban did so."). Here, the defendant has made no such showing that the group with which he fought satisfied these criteria.

In sum, unless the conflict is international *and* the group with which defendant fought satisfies the Article 4 criteria, he may not validly assert the combatant's privilege from domestic criminal sanction. *See Lindh*, 212 F. Supp. 2d at 554; *see also United States v. Khadr*, 717 F. Supp. 2d 1215, 1222 (USCMCR 2007). Because you have failed to make either showing, the lawful combatant affirmative defense is unavailable to you and therefore the discovery materials you seek cannot be relevant to such a defense.

*Public Authority Defense*

As with the lawful combatant defense, the defendant bears the burden to establish the affirmative defense of public authority.

Rule 12.3 states that "if a defendant intends to assert a defense of actual or believed exercise of public authority on behalf of a law enforcement agency or federal intelligence agency," the defendant must provide notice to the government. The notice must identify the law enforcement or intelligence agency involved, the particular agency member the defendant claims to have acted on behalf of and the time during which the defendant acted with public authority. To date, no such notice has been provided.

Beyond the notice requirement, in order to prevail on the public authority affirmative defense, the defendant must establish that the following three things are more likely true than not true:

1. An [agent; representative; official] of the United States government [requested; directed; authorized] the defendant to engage in the conduct charged against the defendant; and

2. This [agent; representative; official;] had the actual authority to grant authorization for the defendant to engage in this conduct; and

3. In engaging in this conduct, the defendant reasonably relied on the [agent's; representative's; official's] authorization.

3

*See* Pattern Instruction 6.06, Seventh Circuit Pattern Federal Jury Instructions—Criminal (2012). "In other words, the public-authority defense requires reasonable reliance by a defendant on a public official's directive to engage in behavior that the defendant knows to be illegal." *United States v. Strahan*, 565 F.3d 1047, 1051 (7th Cir. 2009). More succinctly, a defendant must establish that someone in the government must have authorized his actions. *See United States v. Stallworth*, 656 F.3d 721, 727 (7th Cir. 2011).

You have not offered any indication of what public official, law enforcement agency, or intelligence agency authorized the defendant to engage in the criminal conduct set forth in the indictment or, at the very least, was allegedly relied upon by the defendant to support his belief that his conduct was lawful. Nor have you identified any particular supporting directive issued by the U.S. government to any organization or group with which the defendant fought. Your proposed defense cannot be supported if you cannot cite to any U.S. government official or component that sanctioned the defendant's conduct. *See United States v. Kashmiri*, No. 09 CR 830-4, 2011 WL 1326373, at *3 (N.D. Ill. Apr. 1, 2011).

Moreover, without making any representations regarding the government's willingness or ability to provide any of the requested material, the lack of specifics prevents the government from even being able to conduct a search for the relevant material as it relates to the defendant. In order to first conduct a search the government would need to know, at a minimum, what group the defendant was fighting with that he alleges was supported by the United States Government, what United States agency was supporting the group, and the time frame this occurred. As it currently stands, your request appears to be nothing more than an attempt to gather information in an effort to support an unsubstantiated theory. *United States v. Tokash*, 282 F. 3d 962, 971 (7th Cir. 2002) ("Rule 17(c) is not a discovery device to allow criminal defendants to blindly comb through government records in a futile effort to find a defense to a criminal charge. Instead, it allows only for the gathering of specifically identifiable documents which a defendant knows to contain relevant evidence to an admissible issue at trial.").

The Constitution "does not grant criminal defendants the right to embark on a 'broad or blind fishing expedition among documents possessed by the government.'" *United States v. Mayes*, 917 F.2d 457, 461 (10th Cir. 1990) (quoting *Jencks v. United States*, 353 U.S. 657, 667 (1957)). "[To] establish a violation of *Brady*, a defendant must provide the court with some indication that the materials to which he . . . needs access contain material and potentially exculpatory evidence." *United States v. Brandon*, 17 F.3d 409, 456 (1st Cir. 1994). *See United States v. Caro-Muniz*, 406 F.3d 22, 29-30 (1st Cir. 2005) (denying discovery of tape recordings which the defense alleged "may" contain *Brady* materials); *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000) ("Allegations that are merely 'conclusionary' [*sic*] or are purely speculative cannot support a *Brady* claim."); *United States v. Gonzalez*, 466 F.2d 1286, 1288 (5th

4

Cir. 1972) (denying discovery of the "names and addresses of all persons having knowledge pertaining to the facts of this case" as essentially "asking the government to simplify [the defendant's] task of evidence-gathering"); *United States v. Clay*, 2006 WL 2265254, at *15 (E.D. Ark. 2006) ("[The defendant] is asking for sweeping discovery, but has provided no basis for the Court to determine that his requests are anything more than a grand 'fishing expedition' to see if something exculpatory turns up.").

It should be noted that the defendant will be able to present admissible evidence of a good faith belief that his conduct was lawful. *See United States v. Anderson*, 872 F.2d 1508, 1517-1518 (11th Cir. 1989).

In conclusion, the government will not be producing any of the requested documents or information in response to your October 11, 2017 request.

Please call us if you have any questions.

                                              Very truly yours,

                                              JOHN R. LAUSCH, JR.
                                              United States Attorney

By:   */s/ Barry Jonas*
                                              Barry Jonas
                                              Shoba Pillay
                                              Assistant United States Attorneys

                                              Andrew Sigler
                                              Trial Attorney
                                              National Security Division